100 N.J. Super. 130 (1968)
241 A.2d 271
ROBERT N. ERRINGTON, PLAINTIFF-RESPONDENT,
v.
MANSFIELD TOWNSHIP BOARD OF EDUCATION, IN THE COUNTY OF WARREN, DEFENDANT-RESPONDENT, AND CATHERINE D. HARSHA, WILLIAM MANNON, NORMA CREGAR, JAMES A. KNAPP, MYRTLE DARCY AND JAMES R. ALLEN, INTERVENORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 2, 1968.
Decided March 27, 1968.
*132 Before Judges KILKENNY, CARTON and ROSEN.
Mr. Thomas L. Morrissey argued the cause for appellants (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Michael S. Waters, on the brief).
Mr. Wayne Dumont, Jr., argued the cause for respondent Mansfield Township Board of Education.
Mr. Robert N. Errington, respondent, argued the cause pro se.
The opinion of the court was delivered by KILKENNY, J.A.D.
The six intervenors, former members of the Board of Education of Mansfield Township, who were sued individually by plaintiff in other separate suits for libel, appeal from a judgment of the Law Division in favor of plaintiff and defendant board of education, rejecting the claim of the intervenors that the board of education be directed to pay the legal fees and expenses in defending them in libel actions.
This matter is before us for the second time. In our earlier opinion, 81 N.J. Super. 414 (1963), we affirmed a summary *133 judgment in favor of plaintiff, prohibiting the board of education from spending public funds for the legal defense of board members sued individually for libel. We deemed the allegedly tortious conduct to be the personal responsibility of the individual defendants and, under the particular facts of the case, not entitled to be defended at the public expense.
The Supreme Court granted certification, 41 N.J. 519 (1964), and thereafter reversed and remanded the matter so that a full record could be made in the libel actions. The Supreme Court deemed the meager record before it inadequate to resolve the question. The board agreed not to spend the public funds in the interim. 42 N.J. 320 (1964).
Depositions were then taken in the libel actions. Following the depositions, on January 12, 1966 a stipulation was entered into dismissing with prejudice both libel actions. Plaintiff was paid some consideration for signing the stipulation of dismissal.
The issue of the board's power to pay for the legal defense of its members sued personally for libel was left open in the settlement between plaintiff and the intervenors. At oral argument plaintiff stated that he was under the belief that the settlement made with him included a surrender by the individual board members of their claim for payment of their legal defense by the board. He conceded that such belief is not supported by anything in the settlement papers.
On March 17, 1966 the board rejected the request of the six former members to have their legal fees paid. These six then intervened in this action since they were personally interested and the board, as now constituted, was unwilling to pay and felt that it was legally unable to expend board funds for the legal defense of its former members sued individually for the alleged libels.
Subsequent to our decision and that of the Supreme Court and before the instant action was fully tried before the Law Division sitting without a jury in November 1966, the *134 Legislature enacted N.J.S.A. 18:5-50.20, effective July 22, 1965. It provides:
"Whenever a civil or a criminal action has been brought against any person for any act or omission arising out of and in the course of the performance of his duties as a member of a board of education, and in the case of a criminal action, such action results in final disposition in favor of such person, the cost of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, shall be borne by the board of education."
Both sides agree that this law, although seemingly tailored to fit the instant case, is only expressive of the law existing prior thereto. Its purpose was merely to state expressly a power deemed to exist impliedly in boards of education prior to its enactment.
We may assume, therefore, that a board of education has the power and the duty, now by statute as well as under its previous implied power, to pay or reimburse a member for the legal expenses involved in defending himself for any act and omission "arising out of and in the course of the performance of his duties as a member of a board of education." Thus, the narrow issue to be initially determined is whether the allegedly defamatory open letter which board member Catherine D. Harsha caused to be published on or about November 30, 1961 in the public press concerning plaintiff was an act "arising out of and in the course of the performance of her duties as a member of the board of education."
The Law Division held that is was not. We need not repeat herein the detailed and extensive analysis of the evidence or the rationale of the trial judge by which that conclusion was reached. They are clearly set forth in his comprehensive opinion. In substance, he held that Mrs. Harsha had composed the letter by dint of her own effort and had caused it to be published without authorization from the board. She had read its contents over the telephone to only two other members of this nine-member board *135 of education. The mere fact that she was then president of the board did not clothe her with any authority to publish the letter. Nor did her motivation, even though one could assume they were salutary as well as personal. The letter was intended to annihilate a critic of the board's espousal of a site for a new school and thereby to influence voters at a pending referendum soon to be held. In her answer to the complaint, Mrs. Harsha asserted that she wrote the letter "for the purpose of defending her own reputation." The trial court concluded that her allegedly defamatory act did not arise out of and in the course of the performance of her duties as a member or as the president of the board of education. We agree with that conclusion.
The referendum carried. Almost a year later, but within one year of the publication as limited by the statute of limitations (N.J.S. 2A:14-3), plaintiff sued Mrs. Harsha for libel. Then, for the first time, the board of education sought to help out in what had theretofore been the personal and unauthorized act of Mrs. Harsha. It adopted a resolution at a public meeting of the board held on November 15, 1962, in which it referred to the libel suit against Mrs. Harsha, and stated that at the time of the alleged libelous offense she "was acting on behalf of the Mansfield Township Board of Education and was acting as its chief executive officer," and resolved that the board "shall direct its legal counsel to vigorously defend said suit" on her behalf. This resolution induced the second libel suit by plaintiff against those board members who voted for its adoption.
The trial court concluded that this belatedly adopted resolution did not cure the situation so far as Mrs. Harsha was concerned. Nor did the fact of its adoption at a board meeting on the advice of counsel warrant the expenditure of public funds to defend a libel suit against the board members who had voted for it. The trial judge reasoned that the board lacked authority under the law to ratify a "personal attack" made by one of its members upon a critic of board policy. As the trial judge expressed it, referring to *136 Mrs. Harsha's letter, "It was not a refutation. It was an attack upon the man." This completely unauthorized attack was not put in the mail and sent to the voters, but was broadcast in a "Letter to the Editor." The trial judge observed that a sympathetic board "should not have the power to saddle taxpayers' funds with an admission of liability," a result which would follow if the resolution declaring Mrs. Harsha's act authorized were upheld. Thus, if Mrs. Harsha had acted as the board's agent in publishing a libel, a judgment against her might become the board's responsibility to pay.
The test applied to the first resolution was deemed equally applicable to the board's second resolution, adopted at a public meeting held on December 2, 1962, whereby the employment of counsel was authorized to defend those board members who were sued for libel because of their having voted for the first resolution of November 15, 1962, authorizing the hiring of counsel to defend the libel suit against Mrs. Harsha. The trial judge concluded that the December 2nd resolution "carries no greater validity and must be set aside."
We said in our previous opinion:
"The board members who voted for the adoption of the resolution, confirming their informal authorization previously given to Mrs. Harsha to send a letter to plaintiff and impliedly ratifying the contents of the letter sent by her, have no greater right to be defended at the public expense than does Mrs. Harsha. The fact of board action cannot alter the basic personal nature of the letter actually sent. Nor can it be said that the letter advanced any legitimate school board purpose." (81 N.J. Super., at p. 421).
In the light of the more detailed trial record and the fact findings of the trial judge, we have reexamined those conclusions.
The proofs fail to establish that Mrs. Harsha was ever "informally authorized" by a majority of the board members to send the letter in question. As noted above, only two other members of the nine-member board were informed of its contents before it was published. The board's resolution *137 of November 15, 1962, whereby it authorized the hiring of an attorney to defend Mrs. Harsha, was not intended as a republication of the asserted libel but rather as legal justification for the expenditure of public funds. That justification was sought in the recital in the preamble  albeit erroneous  that Mrs. Harsha had acted for the board.
We observe a distinction between the expenditure of board funds to defend a purely personal tort action against a board member and a similar expenditure of public funds to defend board members sued for libel, when the basis of that suit is a resolution duly adopted at a public meeting of the board. When the board members, in a proper meeting duly assembled, vote upon a resolution relating to the expenditure of the board's funds, their act in doing so "arises out of and in the course of the performance of their duties as members of the board." The resolution may be invalid for want of authority to spend the public funds for the designated purpose, as here. The expenditure may be enjoined and the resolution may be judicially set aside, as in the instant case. The board members may have been legally mistaken in their belief that the resolution could be validly adopted. But the conclusion still persists that the board members, in adopting the resolution to engage counsel to defend a board member sued for libel and thereby authorizing the expenditure of public funds, were performing an act which arose out of and during the course of the performance of their duties as board members.
The trial court emphasized the word "duties" in reaching its conclusion and strictly interpreted it to exclude the adoption of a resolution to authorize the defense of a board member sued for libel. We would not construe the expression "in the performance of their duties" so narrowly. Such a strict construction of "duties" would exclude all tortious conduct by a board member, because it is never a "duty" of a board member to commit a tort. It would also exclude all invalid resolutions because it is not a "duty" of a board member to pass an invalid resolution. The purpose *138 of the new statute is to make manifest the implied power of boards of education to provide for the legal defense of a member of the board who is sued individually for some action taken by him in furtherance of his prescribed duties. Those duties are prescribed by statute, by the rules and regulations of the board itself and of those who supervise its activities, and by resolutions of the board authorizing specific action to be taken. The adoption of the resolution which gave rise to the libel suit against the board members who voted for it was an act performed by them in the performance of their duties as board members. While the resolution may have lacked validity insofar as it provided for the legal defense of Mrs. Harsha in the first libel action against her, it was an act for which the members sued in the second libel action were entitled to be defended at the board's expense.
We need not consider whether the defense of qualified privilege would have relieved the board members from personal responsibility by reason of the adoption of the resolution at a duly convened public meeting of the board. The libel actions were settled by the payment of a nominal consideration to plaintiff by the individual defendants and the execution and exchange of mutual releases.
We agree with the trial court that the intervenors are not entitled to reimbursement for any personal expenses they may have incurred by reason of their intervention in this litigation. They intervened to serve their own personal interests. Defendant board of education retained counsel to represent it in this litigation, including the original appellate proceedings, the trial on remand and the present appeal. Such counsel is entitled to be paid the reasonable value of services rendered in representing the board as a board.
The parties stipulated at the inception of trial that the damages would be $2,686.67, if judgment were recovered against the board. We assume that this figure related to the libel actions. Since we are holding that Mrs. Harsha was not entitled to legal defense at the public expense, but the *139 board members who were sued for voting the board resolution were, the board will pay one-half of that amount for defending the second libel action, unless within 30 days of the coming down of our mandate, the parties mutually agree upon a different apportionment.
There will be no costs by any party against any other party on this appeal.
The judgment is modified as noted above.