287 N.J. Super. 15 (1996)
670 A.2d 106
PAUL NORMAN BOWER AND WILLS, O'NEILL & MELLK, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF EDUCATION OF THE CITY OF EAST ORANGE, DEFENDANT-APPELLANT, PAUL NORMAN BOWER, PETITIONER-APPELLANT,
v.
BOARD OF EDUCATION OF THE CITY OF EAST ORANGE, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1995.
Decided January 30, 1996.
*17 Before Judges KING, LANDAU and KLEINER.
Gail Oxfeld Kanef argued the cause for Paul Norman Bower (Balk, Oxfeld, Mandell & Cohen, P.A., attorneys; Ms. Kanef, on the brief).
Ronald S. Sampson argued the cause for Board of Education of the City of East Orange (Love & Randall, attorneys; Mr. Sampson, on the brief).
Arnold M. Mellk argued the cause for Wills, O'Neill & Mellk (Wills, O'Neill & Mellk, attorneys; Mr. Mellk, on the brief).
Pamela B. Katten argued the cause for New Jersey State Board of Education (Deborah T. Poritz, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Marlene Zuberman, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
By our order dated January 31, 1995, we consolidated these two separate but related appeals to consider whether criminal conduct ascribed to Paul Norman Bower, a tenured kindergarten teacher employed by the East Orange Board of Education, arose "out of and in the course of the performance of his duties," thus qualifying Bower for indemnification for legal fees and costs incurred in his defense of those criminal charges. For the first time we construe N.J.S.A. 18A:16-6.1, "Indemnity of officers and employees in certain criminal actions," in the context of a dismissal of criminal charges prior to a criminal trial.
The first appeal, A-6827-93T1, is from a decision of the State Board of Education denying Bower's petition seeking indemnification by the East Orange Board of Education for legal fees and costs incurred in his defense of indictments returned by the Essex County Grand Jury.
*18 The second appeal, A-4836-93T1, is from a decision in the Law Division which granted summary judgment to plaintiffs, Bower and his attorneys Wills, O'Neill & Mellk, against defendant Board of Education of the City of East Orange on a complaint seeking a judgment indemnifying Bower for attorney's fees and costs in his defense of the same indictments.
We conclude that the charges against Bower arose "out of and in the course of his duties" as a kindergarten teacher and that Bower is therefore entitled to indemnification for legal fees and costs in his defense of the indictments. We reverse the decision of the State Board of Education that denied Bower indemnification. We affirm the decision of the Law Division that granted summary judgment to plaintiffs on their complaint seeking indemnification of Bower and the payment of his legal fees and costs.

I
On February 10, 1987, Bower was indicted on four counts of aggravated sexual assault in violation of N.J.S.A. 2C:14-2 and three counts of endangering the welfare of children in violation of N.J.S.A 2C:24-4. Testimony before the grand jury from two children and their parents and a statement from a third child described incidents of sexual abuse by Bower. The incidents allegedly took place during school hours in a bathroom connected to Bower's classroom in the Ashland School. Each child was a student of Bower. The Board suspended Bower without pay on March 3, 1987.
On October 11, 1988, Judge Falcone dismissed the indictment without prejudice. The State's unpreparedness for trial occasioned the dismissal. Bower returned to work in a non-teaching assignment on October 17, 1988. On March 15, 1989, an Essex County grand jury returned a second indictment against Bower on the same charges. On March 20, 1989, the Board of Education again suspended Bower. Judge Hazelwood dismissed the second *19 indictment with prejudice on July 3, 1990.[1]
On March 30, 1989, prior to dismissal of the second indictment, Bower filed a petition with the Commissioner of Education seeking indemnification from the Board of his legal fees and costs incurred in defending against prosecution of the first indictment, pursuant to N.J.S.A. 18A:16-6.1. The Commissioner referred the matter to the Office of Administrative Law.
Following a hearing, the Administrative Law Judge filed a written decision recommending that the Commissioner deny Bower's request for $20,340.95 in legal fees. On the record before him, the A.L.J. was unable to determine whether the children allegedly abused were Bower's students and whether the alleged abuse took place on school property during school hours. Consequently, the A.L.J. determined that Bower could not establish the nexus required by N.J.S.A. 18A:16-6.1, that the conduct alleged in the charges against him arose "out of and in the course of the performance of [his] duties" as a teacher. Furthermore, the A.L.J. found that dismissal of the first indictment without prejudice was not a "final disposition in favor" of Bower as required by N.J.S.A. 18A:16-6.1. The Commissioner of Education adopted the A.L.J.'s findings and dismissed the petition on August 10, 1990.
On August 14, 1990, Bower appealed the Commissioner's dismissal to the State Board of Education. As noted, the second indictment was dismissed on July 3, 1990. The State Board of Education remanded the matter to the A.L.J. for determination in light of the dismissal of the second indictment, instructing that
[o]n remand, Petitioner has the burden of establishing 1) a nexus between the alleged conduct forming the basis of the charges and the performance of his duties in the district so as to support a finding that the criminal actions against him *20 involved alleged acts or omissions arising out of and in the course of the performance of his duties, and 2) a favorable disposition of the criminal charges.
On September 27, 1991, after considering a supplemented record, the A.L.J. again recommended that Bower's request for indemnification be denied. Although the A.L.J. concluded that the second dismissal constituted a final favorable disposition, Bower was unable to satisfy the A.L.J. that the conduct alleged in the criminal charges arose "out of the performance of his duties as a teacher". The A.L.J. noted:
At most, the only thing that can be said is that Bower's accusers are his former students and that the locale of the alleged misconduct is on school property. None of the proofs supply the crucial element that the charges are connected with his teaching assignment or that Bower was engaged in carrying out his official duties.
The Commissioner adopted the A.L.J.'s recommendation on November 12, 1991, emphasizing that Bower failed to
explain[] why he was in the bathroom with any or all of the three boys in question. Neither is there any testimony or evidence proffered in this remand suggesting how his behavior in regard to any of these charges, or denial of same, is legitimately linked to his bona fide teaching responsibilities. (emphasis in original).
Bower again appealed to the State Board of Education. On August 4, 1994, the State Board affirmed the Commissioner's ruling. The State Board reemphasized that Bower failed to meet his "affirmative burden" of establishing the required nexus between the conduct out of which the charges arose and the performance of his duties as a teacher. The State Board stated:
The record, as supplemented on remand, indicates only that the alleged conduct occurred in a bathroom adjoining petitioner's kindergarten classroom. There is no indication in the record as to whether this facility was for the exclusive use of students or whether teachers also used the facility.... Nor is there anything to show that any of his teaching duties required that he accompany the students into the facility.
Bower filed a notice of appeal to this court on August 23, 1994.

II
On March 19, 1991, while Bower was pursuing his administrative remedy, Bower's attorneys filed suit on behalf of Bower and themselves in the Law Division, seeking a judgment of $41,024 in *21 attorney fees and $2,500 for disbursements, representing the work done in defending Bower against both indictments. Judge Paley concluded that the criminal charges filed against Bower did, indeed, arise out of the performance of his duties because Bower's "involvement with those children was produced by his contact with them ... as a teacher." On March 31, 1994, Judge Paley awarded $2,500 for disbursements and $30,000 for attorney fees to plaintiffs.[2]

III
Bower claims entitlement to indemnification pursuant to N.J.S.A. 18A:16-6.1, which states:
Should any criminal action be instituted against any such person for any such act or omission and should such proceeding be dismissed or result in a final disposition in favor of such person, the board of education shall reimburse him for the cost of defending such proceeding, including reasonable counsel fees and expenses of the original hearing or trial and all appeals.
The language of this provision refers back to and incorporates the requirements of N.J.S.A. 18A:16-6, governing indemnification in civil actions. Scirrotto v. Warren Hills Bd. of Educ., 272 N.J. Super. 391, 396, 640 A.2d 302 (App.Div. 1994). N.J.S.A. 18A:16-6 states:
Whenever any civil action has been or shall be brought against any person holding any office, position or employment under the jurisdiction of any board of education, including any student teacher or person assigned to other professional pre-teaching field experience, for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching or other assignment to professional field experience, the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and said board may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.
[(emphasis added).]
*22 On appeal, all parties agree that N.J.S.A. 18A:16-6.1, read in conjunction with N.J.S.A. 18A:16-6, establishes a two-part test for entitlement to indemnification: (1) the conduct providing a basis for the criminal charges must "aris[e] out of and in the course of the performance of the duties" that a claimant performs for a board of education, and (2) there must be a final disposition on the charges favorable to the claimant. Bower has satisfied the second prong of the test. The dismissal of the second indictment with prejudice constituted a final disposition favorable to Bower. The only issue is whether Bower's alleged conduct leading to charges of aggravated sexual assault and endangering the welfare of children arose "out of and in the course of the performance of [Bower's] duties" as a kindergarten teacher.
Bower contends that he meets the requirement for indemnification because the three children named in the indictments were students assigned to his kindergarten class and the conduct ascribed to him is alleged to have taken place in the school during the school day. To buttress his argument, Bower cites the statutory definition of endangerment.
N.J.S.A. 2C:24-4 provides, in part:
a. Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in R.S. 9:6-1, R.S. 9:6-3 and P.L. 1974, c. 119, § 1 (C.9:6-8.21) is guilty of a crime of the third degree.[3]
(emphasis added).
Bower contends that as a teacher, he had a legal duty for the care of his students and that therefore any accusation of misconduct on his part while performing his duties as a teacher must be deemed to have "arisen out of and in the course of the performance of the duties" of his employment.
In evaluating Bower's contention, we note that the reported decisions in New Jersey interpreting N.J.S.A. 18A:16-6 and *23 N.J.S.A. 18A:16-6.1 have focused on the actual conduct of the person seeking indemnification. None of those cases involve only alleged conduct.
The earliest reported decision construing N.J.S.A. 18A:16-6 is Errington v. Mansfield Twp. Bd. of Educ., 81 N.J. Super. 414, 195 A.2d 670 (App.Div. 1963), rev'd and remanded on other grounds, 42 N.J. 320, 200 A.2d 492 (1964), decision following remand, 100 N.J. Super. 130, 241 A.2d 271 (App.Div. 1968). In Errington, the president of a school board was sued for libel and sought indemnification for legal fees incurred in defending that civil action. Id. at 416, 195 A.2d 670. We framed the issue as "whether the allegedly defamatory open letter which [the president of the board] caused to be published ... in the public press concerning plaintiff (the libeled party) was an act `arising out of and in the course of the performance of her duties as a member of the board of education[,]'" therefore entitling her to indemnification for the costs of her legal defense. Errington, supra, 100 N.J. Super. at 134, 241 A.2d 271. We concluded that publication of the letter did not arise in the course of her duties. Id. at 135, 241 A.2d 271. In doing so, we noted that the board president had not been authorized by the board to write or publish the letter, and that she had not notified a substantial number of members as to its existence or contents. Id. at 134-35, 241 A.2d 271. We opined that the phrase "in the performance of their duties" should not be construed to exclude all tortious conduct on the theory that a board member never has a duty to commit a tort. Id. at 137, 241 A.2d 271.
We acknowledge that Errington has limited precedential value in this matter. In Errington, there existed no dispute as to whether the official engaged in the tortious conduct. Here, whether Bower ever engaged in the complained-of conduct is unclear and has never been established by any party. This distinction makes more difficult the task of determining whether Bower is entitled to indemnification.
A seminal decision pertinent to the issue before us is Powers v. Union City Bd. of Educ., 124 N.J. Super. 590, 308 A.2d 71 (Law *24 Div. 1973), aff'd o.b., 127 N.J. Super. 294, 317 A.2d 373, (App.Div.), certif. denied, 65 N.J. 575, 325 A.2d 709 (1974). Powers involved the indictment of a board of education member under 18 U.S.C.A. § 1951 for participating in a conspiracy to extort money from contractors doing business with the Union City Board of Education. Id. at 592, 308 A.2d 71. After he was acquitted on all counts, Powers sought indemnification for litigation costs pursuant to N.J.S.A. 18A:12-20, a provision similar to the statutory scheme implicated in the present case. Id. at 591, 308 A.2d 71. The issue before the Powers court was "whether the criminal charge of which defendant was acquitted was for any act or omission arising out of and in the course of the performance of his duties....'" Id. at 593, 308 A.2d 71.
To begin its analysis, the Law Division rejected the argument that Powers' acts could not be in the course of his duties because they were illegal. The court noted, "The fact ... that the alleged criminal acts were obviously beyond the prescribed duties of a board member does not in itself immunize the board from the statutory liability; for such a construction would exclude all criminal conduct and frustrate the express intent of the legislature." Id. at 595, 308 A.2d 71.
The court then analogized the statutory language to that found in the Workers' Compensation Act, adopting the distinction between arising "out of" and arising "in the course of" that characterized cases under the Act. Id. at 595-96, 308 A.2d 71. The arising out of component of the standard required that the charges "`result[] from a risk "reasonably incidental"'" to the board member's duties. Id. at 595, 308 A.2d 71 (quoting Tocci v. Tessler & Weiss, 28 N.J. 582, 586, 147 A.2d 783 (1959)). The arising in the course of component required that the charges result from acts or omissions "`occur[ring] within [the employment] period at a place where the employee may properly be and while he is fulfilling the duties of his employment "or doing something incidental to it."'" Id. at 595-96, 308 A.2d 71 (quoting Tocci v. Tessler & Weiss, 28 N.J. 582, 586, 147 A.2d 783 (1959)).
*25 After applying these criteria and concluding that Power's alleged misconduct did not arise from performance of his duties, the court cautioned that
[t]he liberal approach in applying the statute in civil litigation ... has no relevancy in the context of the criminal conduct in this case....
In connection with criminal conduct the facts should be analyzed strictly rather than liberally, so that reimbursement of legal fees and expenses should only ensue when the circumstances are such as to fit clearly within the legislative limitations.
[Id. at 597-98, 308 A.2d 71.]
The court in Powers chose to look at the alleged conduct in determining the right to indemnification and framed the issue as follows:
if the conduct giving rise to the charge fails to meet either the requirement that it arise out of the performance of the public duties or in the course of the performance of those duties, the obligation to pay for the legal defense remains with the individual and cannot be imposed as a public burden.
[Id. at 596, 308 A.2d 71 (emphasis added).]
The fact that Powers was ultimately acquitted on the charges of extortion was apparently not persuasive to the Law Division. The court concluded that where the alleged unlawful conduct was carried on outside the scope of a defendant's duties, an acquittal will not entitle him to indemnification. Id. at 597, 308 A.2d 71. However, conduct may fall within the scope of a defendant's duties even if it is unlawful. Ibid. The court distinguished extortion from other criminal acts that may arise out of and in the course of performance of the duties of a member of a board of education, e.g., voting to exclude a child from a public school because of race, creed, or color. Id. at 596-97, 308 A.2d 71.
In Scirrotto v. Warren Hills Bd. of Educ., supra, a public school teacher sought indemnification under N.J.S.A. 18A:16-6.1 for legal costs incurred in successfully defending against charges of bribery in official matters, threats and improper influence in official matters, and compounding. 272 N.J. Super. at 394, 640 A.2d 302. The charges arose from statements made in an attempt by the teacher to obtain reinstatement and tenure following his release from employment. Id. at 393, 640 A.2d 302. Although acknowledging that the statements, made to Scirrotto's superior during a meeting, *26 "arguably" were made in the course of Scirrotto's duties, we found that his conduct did not arise out of performance of those duties. Id. at 398, 640 A.2d 302. The statements were made for the purpose of pressuring administration officials to grant tenure, not to advance Scirrotto's duties of teaching history to high school students. Id. at 397-98, 640 A.2d 302. We quoted Errington for the proposition that
[t]he officer must have been acting in a matter in which the corporation has an interest, he must have been acting in the discharge of a duty imposed or authorized by law and he must have acted in good faith.
[Id. at 397, 640 A.2d 302 (quoting Maitland v. Town of Thompson, 129 Conn. 186, 27 A.2d 160, 162 (1942)).]
Scirrotto focused upon the teacher's conduct in making allegedly criminal statements, not upon the time and place circumstances under which the statements were made. Id. at 397, 640 A.2d 302. We note that Scirrotto was found guilty of bribery, but that the charges of threats and improper influence in official matters and of compounding were dismissed during his trial on defendant's motion for judgment of acquittal. Id. at 394, 640 A.2d 302. Scirrotto's bribery conviction was reversed when we concluded that "there was insufficient evidence from which a reasonable jury could find that a `benefit' had been offered by Scirrotto" to the persons to whom the statements were made or to the school system. Id. at 394-95, 640 A.2d 302. Like Errington, however, Scirrotto is not conclusive on the issue here because there was no dispute that the statements were made. See id. at 394-95, 640 A.2d 302.
We think that there is a need to distinguish those cases in which an act is alleged and a school employee is vindicated after trial, such as Powers, from those cases in which an allegation of misconduct is asserted against an employee and the charge is withdrawn or dismissed prior to trial. In the latter set of cases, there will be no findings of fact concerning the actual conduct of the defendants. The effect of this distinction becomes clearer when we focus on legislative intent.
*27 Prior to 1986, the Legislature provided for indemnification of public employees if the employee was a defendant "in any action or legal proceeding arising out of or incidental to the performance of his duties." See N.J.S.A. 40A:14-155, police officers; N.J.S.A. 40A:14-117, county police or park police; N.J.S.A. 40A:14-28, municipal fire department members or officers, whether paid, part-paid, or volunteer. Each statute tracked, but was not identical to N.J.S.A. 18A:16-6 which provided indemnification for school personnel "for any act or omission arising out of and in the course of the performance of the duties of such office." We have viewed the differences among the statutes as negligible. The difference in the wording of the statute was disregarded in Powers, in which we interpreted "arising in the course of" as requiring that the charges result from acts or omissions "`occur[ring] within [the employment] period at a place where the employee may properly be and while fulfilling the duties of his employment "or doing something incidental to it."'" 124 N.J. Super. at 595-96, 308 A.2d 71.
In Moya v. New Brunswick, 90 N.J. 491, 448 A.2d 999 (1982), plaintiff was a police officer who had been indicted and charged in three separate indictments with breaking and entering with intent to steal, in violation of N.J.S.A. 2A:94-1, larceny of goods in excess of $500, in violation of N.J.S.A. 2A:119-2, and misconduct in office, in violation of N.J.S.A. 2A:85-1. Id. at 495, 448 A.2d 999. As noted by the Supreme Court:
The indictments charged that Moya, while "acting under color of [his] office," provided assistance to breaking and enterings by other officers "in police uniforms, in police vehicles and while performing the duties for which [their] office was created."
[Id. at 496, 448 A.2d 999.]
Moya was acquitted on the first two indictments after a jury trial; the third indictment was then administratively dismissed. Ibid. Moya claimed in a suit against his employer the right to be reimbursed his legal fees under N.J.S.A. 40A:14-155. The trial court, relying on our decision in Valerius v. Newark, 168 N.J. Super. 529, 403 A.2d 932 (App.Div. 1979), concluded that the criminal *28 acts with which Moya was charged did not "by any stretch of the imagination" arise out of and were not incidental to the performance of Moya's duties of a police officer. Ibid. Moya appealed. While that appeal was pending, the Supreme Court reversed our decision in Valerius, 84 N.J. 591, 423 A.2d 988 (1980). Accordingly, in an unreported decision, we reversed the trial decision in Moya. Thereafter our decision was affirmed, 90 N.J. 491, 497, 448 A.2d 999 (1982).
We need not repeat the entirety of the decision of the Supreme Court. We merely note that the court "conclusively assume[d]" that the charges lodged against Moya were false, and that they "were presumably made primarily because he was a police officer." Id. at 498, 448 A.2d 999. At the very least, it is fair to conclude his status was a substantial factor." Ibid.
The Supreme Court concluded:
The test which should be used, therefore, to determine whether or not charges are covered by the statute is whether the charges are connected with the defendant's occupation as a police officer  either because they arise out of the performance of duties or out of the defendant's status as an officer.
[Id. at 502, 448 A.2d 999.]
In Moya, the Supreme Court expounded upon its prior decision in Valerius v. Newark, 84 N.J. 591, 423 A.2d 988 (1980).
In Valerius, a police officer was charged with conspiring with another officer and two civilians to set up a scam in which the sale of drugs by the civilians would be interrupted by the two police just as the buyer-victim was handing the money over. Valerius and the other police officer would appear to make an arrest, confiscate the money, as well as the illegal drugs, all purportedly for the purpose of gathering evidence to be turned over to the municipality. Neither the drugs nor the funds were turned over but were kept by the co-conspirators. After trial, at which Valerius testified, he was acquitted of all charges. We concluded that while the charges did not arise from the performance of Valerius's duties (we assumed that the jury verdict conclusively established that the incident had never occurred since that was Valerius's defense), the charges never would have been made but for the fact that Valerius was a police officer. Since it was his status as a police officer that led to the charge, we concluded that he should be reimbursed for his counsel fees since it would be grossly unfair to do otherwise.
[90 N.J. at 497-98, 448 A.2d 999.]
In Valerius, the Supreme Court also noted:

*29 The conduct charged, however, if true, constituted a perversion and prostitution of his duties and responsibilities as a police officer. Had Valerius been convicted of these charges, this conviction would have established that his conduct neither arose out of nor was incidental to the performance of his duties and hence, was not within the scope of N.J.S.A. 40A:14-155.
However, the fact is that Valerius was found innocent of all charges. Thus the municipality had no basis for concluding that Valerius had engaged in conduct that constituted a perversion and prostitution of his duties and responsibilities as a police officer. Since the charges in the indictment alleged improper use of his status as a police officer and, since the jury, after the development of the underlying facts at trial, rejected the truth of the charges, the matter would be included within the statutory language "arising out of or incidental to the performance of his duties."
[84 N.J. at 596-97, 423 A.2d 988].
On January 15, 1986, N.J.S.A. 40A:14-155 was amended and now provides:
Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense. (emphasis supplied)
The Senate County and Municipal Government Committee Statement, Senate, No. 1684-L. 1985, c. 457 attached to the amended statute states, in part:
A number of decisions by the courts of this State have expanded the obligation imposed by the literal terms of this section to reach, not only charges of improper performance of police duties, but also charges arising from acts outside the scope of police duties, but occurring in the course of the performance of those duties, and charges arising solely from the person's status as a police officer. The bill would eliminate the coverage of this section for charges arising from acts outside the scope of police duties, but occurring in the course of the performance of those duties, and for "status charges." (emphasis added)
Although the Legislature amended N.J.S.A. 40A:14-155 in reaction to Valerius and Moya, it did not amend N.J.S.A. 18A:16-6 or N.J.S.A. 18A:16-6.1. Basic tenets of statutory construction counsel that when one of two similar or related statutes is amended, the fact that the Legislature retains the second *30 statute as originally written operates as an implicit approval of the second statute. We recognize that N.J.S.A. 18A:16-6 and 16-6.1 were closely related to N.J.S.A. 40A:14-155 as it was written and interpreted prior to amendment. "It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter." 2B Sutherland on Statutory Construction § 51.0-2 (Singer ed., 5th ed. 1992). See also Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471, 484, 378 A.2d 53 (L.Div. 1977) (holding that the above rule may be applied when the statutes were adopted at different times and make no reference to each other). Furthermore, "Legislative action by amendment ... with respect to other parts of a law ... may indicate approval of interpretations pertaining to the unchanged and unaffected parts of the law." Sutherland, supra, § 49.10.
We take these principles, when read together, to instruct that the Legislature's retention of the indemnification law as it pertains to teachers is valid as written and is not subject to the same interpretation as the amended indemnification law as it pertains to police officers. Therefore, the limitation placed on indemnification of police officers was not contemplated by the Legislature to apply to teachers. We also find that although the net results of Valerius and Moya have been rendered obsolete by this legislative action, the rationale articulated by the Supreme Court in those cases is appropriate for analysis in this appeal.
We acknowledge that Powers and Valerius are in tension on the issue before us, but we find both the facts and reasoning of Valerius to be more relevant here. We read Valerius to advocate an examination not of the official's alleged conduct, but of the charges which provide the basis of a criminal prosecution when those charges are dismissed for reasons other than the merits. That case suggests that a public official should be indemnified for attorney's fees if the charges  not the official's actual conduct  "arise out of and in the course of employment." As in Powers, we again rely upon the area of workers' compensation for guidance in interpreting that nebulous concept.
*31 In Coleman v. Cycle Transformer Corp., 105 N.J. 285, 520 A.2d 1341 (1986), the Supreme Court indicated that "[t]he task of construction is made easier by breaking the phrase `in half, with the "arising out of" portion construed to refer to causal origin, and the "course of employment" portion to refer to time, place, and circumstances of the accident in relation to the employment.'" Id. at 288, 520 A.2d 1341 (quoting 1A Larson, Workmen's Compensation Law § 6.10 (1985)). Although Coleman constitutes a more recent judicial pronouncement of the meaning of "arising out of and in the course of employment," it does not change the interpretative meaning articulated in Powers.
We also note that Coleman amplified the definition of "arising out of employment" in the following terms:
The accident, in order to arise "out of" the employment, must be of such nature the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.
[Id. at 289, 520 A.2d 1341 (quoting Rafferty v. Dairymen's League Coop. Ass'n, 16 N.J. Misc. 363, 366, 200 A. 493 (Dep't of Labor, Workmen's Comp. Bureau 1938)).]
The Court also stated that "the `but for' or positional-risk test is now a fixture in New Jersey law." Id. at 290, 520 A.2d 1341. Under the "but for" test, an injury "arises out of employment" if "it is more probable that the injury would not have occurred under the normal circumstances of everyday life outside of the employment...." Id. at 291, 520 A.2d 1341. The same would apply to criminal or civil charges that are ultimately dismissed. A charge arises out of employment if it is more probable that the charge would not have been filed under the normal circumstances of everyday life outside of employment.
Applying the Coleman definitions to the facts sub judice and substituting alleged criminal conduct for the concept of injury, it is clear that the alleged conduct meets the standard of "arising out of and in the course of employment" as required in N.J.S.A. 18A:16-6.1. Here, alleged conduct unquestionably occurred in the *32 very school which employed Bower as a kindergarten teacher and which was attended by the alleged victims, students in Bower's kindergarten class. The acts are alleged to have occurred during normal school hours at a time at which these same students were under the specific tutelage of Bower in his capacity as their teacher. These circumstances fulfill the "course of employment" portion of the statute.
Superimposing criminal conduct allegations for the word "accident" within the framework of the Coleman definition of "arising out of employment," the test is:
[t]he criminal charges, in order to arise "out of" the employment, must be of such nature the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a [teacher] has to do in fulfilling his contract of service.
We conceive that a teacher may be at risk for allegations of improper conduct, and even criminal conduct, in a setting in which he or she is exposed to the imagination of an immature student population. We think it would be highly improper to require a teacher to defend against a charge of criminal conduct which is withdrawn by the accuser or which is dismissed with prejudice by a court where the alleged improper conduct clearly arose because of the teacher's status. Said differently, but for the teaching relationship, or the teacher's proximity to an alleged victim, the allegation would not have been filed in the first instance.
Bower was never tried. The criminal charges were dismissed with prejudice. He was clothed with a presumption of innocence when the charges were originally filed and was similarly clothed when those charges were dismissed. The Board of Education had no basis to conclude that Bower had engaged in conduct that constituted a perversion and prostitution of his duties and responsibilities as a school teacher. As the Supreme Court reasoned in Valerius, had Bower been convicted, the conviction would have established that his conduct neither arose our of nor was incidental to the performance of his duties. See 84 N.J. at 596-97, 423 A.2d 988.
*33 Relying again on Valerius, we find that the allegations lodged against Bower are unique to and a function of his profession. Therefore, the charges arose out of his status as a teacher. His alleged victims were his students and the alleged criminal acts occurred during the school day upon school premises. Since the charges arose out of Bower's status as a teacher, we find that he should be reimbursed for his counsel fees since to do otherwise would be grossly unfair. See Moya, supra, 90 N.J. at 498, 448 A.2d 999 (citing Valerius, supra).
We conclude that the denial of reimbursement to Bower of those fees and expenses incurred in the defense of the two indictments returned by the Essex County grand jury violated the statutory right of reimbursement accorded to school personnel under N.J.S.A. 18A:16-6.1. The decision of the State Board of Education is reversed. The decision in the Law Division granting summary judgment to Bower and his counsel is affirmed.
LANDAU, J.A.D., dissenting.
I would affirm the decision of the State Board of Education and reverse the Law Division judgment.[1] The Board's interpretation of N.J.S.A. 18A:16-6.1, a statute within the area statutorily committed to its expertise, appears to me to be that which most accords with the probable legislative intent.
These appeals are not about whether "Bower had engaged in conduct that constituted a perversion and prostitution of his duties and responsibilities as a school teacher." The proper question for review is whether plaintiffs met their burden of proof to establish that the acts or omissions charged arose out of and in the course of Bower's duties as a teacher, i.e., in the good faith discharge of duties imposed or authorized. See Scirrotto v. Warren Hills Bd. *34 of Educ., 272 N.J. Super. 391, 396-97, 640 A.2d 302 (App.Div. 1994). As we noted in Scirrotto, "the facts underlying the criminal charge should be `analyzed strictly rather than liberally, so that reimbursement of legal fees and expenses should only ensue when the circumstances are such as to fit clearly within the legislative limitations.'" Id. at 396, 640 A.2d 302 (quoting Powers v. Union City Bd. of Educ., 124 N.J. Super. 590, 598, 308 A.2d 71 (Law Div. 1973), aff'd o.b., 127 N.J. Super. 294, 317 A.2d 373 (App.Div.), certif. denied, 65 N.J. 575, 325 A.2d 709 (1974)).
The majority's competently crafted opinion relies upon selected principles of legislative construction to support an interpretation of section 6.1 more generous to plaintiffs' satisfaction of their evidential burden than I believe is consistent with the need for strict analysis and a clear fit indicated by our earlier opinions. When it comes to legislative interpretation, there is scripture enough for all to cite. Here, N.J.S.A. 18A:16-6.1 surely does not afford to plaintiffs an unambiguous right to recover legal fees from the East Orange Board of Education. We should, therefore, give substantial deference to the interpretation of the agency charged with its enforcement. Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256 (1992); Singer v. Board of Review, 273 N.J. Super. 72, 77, 640 A.2d 1209 (App.Div. 1994). Our primary task is to effectuate the probable legislative intent, Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993), which we have previously interpreted to require a strict, rather than expansive, view of the facts.
If the legislature has signalled anything about its probable intent when it responded to Valerius v. City of Newark, 84 N.J. 591, 423 A.2d 988 (1980) and Moya v. City of New Brunswick, 90 N.J. 491, 448 A.2d 999 (1982) by amending N.J.S.A. 40A:14-155, it is an aversion to paying for the defense of a public employee against charges arising from acts outside the scope of the employee's duties or by reason of his or her status.
I detect no reason, nor infer any clear legislative purpose, to treat police officers differently than other public employees. When interpreting a statute we are bound to consider not only the *35 particular statute in question, but the entire legislative scheme in order to avoid unreasonable or anomalous results. Reisman v. Great Am. Recreation, Inc., 266 N.J. Super. 87, 96, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993). Further, I reject as unreliable an interpretation of intent based upon the Workers' Compensation Act. That Act must be liberally construed to provide coverage, Fiore v. Consolidated Freightways, 140 N.J. 452, 464, 659 A.2d 436 (1995); Squeo v. Comfort Control Corp., 99 N.J. 588, 596-99, 494 A.2d 313 (1985); Torres v. Trenton Times Newspaper, 64 N.J. 458, 461, 317 A.2d 361 (1974), unlike N.J.S.A. 18A:16-6.1 for which strict construction has been mandated.
Respectfully, therefore, I dissent.
NOTES
[1] We have not been provided on appeal with a transcript of the proceedings dismissing the second indictment. During oral argument in the Law Division on the motion for summary judgment, counsel for the Board of Education revealed that the dismissal of the indictment was necessitated by the refusal of the parents of the victims to allow their children to testify at Bower's criminal trial.
[2] Neither Bower nor his counsel appeals the reduction of the award of counsel fees from $41,024 as requested to $30,000.
[3] The Legislature has since made this a crime of the second degree, L. 1992, c. 6, § 1.
[1] Although the issue was not raised, the Law Division action should also have been brought before the Commissioner who had primary jurisdiction under N.J.S.A. 18A:6-9. See Dore v. Board of Educ., 185 N.J. Super. 447, 452, 449 A.2d 547 (App.Div. 1982).