124 N.J. Super. 590 (1973)
308 A.2d 71
JOHN J. POWERS, PLAINTIFF,
v.
UNION CITY BOARD OF EDUCATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 5, 1973.
*591 Mr. Richard A. Levin for plaintiff (Messrs. Amster & Levin, P.A., attorneys).
Mr. Stephen G. Weiss for defendant (Messrs. Greenwood, Weiss, & Shain, attorneys).
LARNER, A.J.S.C.
This action is brought to recover reasonable counsel fees and expenses incurred by plaintiff in the defense of criminal litigation against him in the Federal District Court of New Jersey. The action is bottomed upon a claim of indemnity by plaintiff, as a member of the Board of Education of Union City, pursuant to the provisions of N.J.S.A. 18A:12-20, which in pertinent part provides:
Whenever * * * a criminal action has been brought against any person for any act or omission arising out of and in the course of the performance of his duties as a member of a board of education, and in the case of a criminal action such action results in final disposition in favor of such person, the cost of defending such action, including reasonable counsel fees and expenses, * * * shall be borne by the board of education.
See similar provisions for officers and employees of a board of education, N.J.S.A. 18A:16-6 and 6.1, and for employees of state educational institutions, N.J.S.A. 18A:60-4 and 5.
*592 Plaintiff was indicted under several counts, along with four codefendants, charging them with violations of 18 U.S.C.A. § 1951 in that, through "the wrongful use of fear of financial injury," they extorted moneys from several contractors who did business with the Union City Board of Education, and, further, conspired to commit such wrongs. The essence of the proofs offered by the government at the criminal trial was that all the defendants participated in a pattern or practice which required most business concerns furnishing products or services to the board to pay kickbacks for their use and benefit, in return for the privilege of doing business and assuring prompt payment of invoices.
The most damaging inculpatory evidence against Powers came from the mouth of an unindicted coconspirator, Dr. Philip F. Castorino, who testified that Powers participated with him each month in counting the funds from the kickbacks and dividing them among the board members, including Powers. Castorino also testified that Powers had advised him of a 10% kickback due on two particular contracts. These allegations of Castorino were categorically denied by Powers, and testimony was offered in defense affecting the credibility of Castorino.
For present purposes it is not essential to review all the testimony at the criminal trial except to note that the litigation involved allegations of unlawful acts occurring which Powers was a member of the board of education and stemming from the business relationship between the board and its suppliers. The allegations were denied by Powers. The jury acquitted him on all counts of the indictment, while two of his co-defendants were convicted.
The acquittal is conclusive for the purpose of determining the right of indemnity under the statute. Hence, the court is not called upon to make a finding of guilt or innocence as a precondition for application of the statute.
Powers commenced his service as a board member on October 27, 1968 and is still serving in that capacity. He has served on several committees, including the maintenance committee *593 which has the responsibility of recommending the award of contracts to the board as an entity, whether on bid or sales solicitation. In addition, he had some degree of responsibility for communication with Anthony Genovese, the architect for the construction of school additions, whose contract and alleged kickbacks were part of the factual complex of the criminal charge.
The basic issue to be determined is whether the criminal charge of which defendant was acquitted was "for any act or omission arising out of and in the course of the performance of his duties as a member of a board of education," within the intendment of the Legislature in making such provision for indemnification.
There are no reported cases which have construed this statute as applied to a criminal action. However, it has been considered in its applicability to civil litigation.
In Errington v. Mansfield Tp. Bd. of Ed., 81 N.J. Super. 414 (App. Div. 1963), the court determined the issue on common law principles since the statute in question was not adopted until 1965. Plaintiff there brought an action in lieu of prerogative writs to restrain the expenditure of school funds for the expense of defending a libel suit brought against the individual members of the board. The court held that the board could not underwrite the expense of defending a libel suit against the members individually since the libelous writing was not in performance of a public duty of such members imposed or authorized by law, even though the subject matter which induced the writing related to a proposed site for a new school. The litigation therefore was purely personal in nature and did not advance any school purpose. As a consequence, the Appellate Division affirmed a summary judgment in favor of the plaintiff.
The Supreme Court reversed, 42 N.J. 320 (1964), and remanded the matter so that a full record could be developed in the libel actions as a basis for decision of the prerogative writ suit, finding that the meager record was inadequate to resolve the question.
*594 The mandate of the Supreme Court was carried out, and by the time the in lieu action came up for further hearing on the complete record the Legislature had passed N.J.S.A. 18:5-50.20 (now N.J.S.A. 18A:12-20). The trial court again held that the expenditure of public funds for defense of the libel actions was unwarranted, by construing the statute strictly and finding that a letter and a resolution of the board which were the basis of the libel action did not strictly arise out of the performance of the "duties" of the members of the board.
On the second appeal to the Appellate Division, the judgment was modified so as to authorize payment for a portion of the expenditures allocated to the adoption of the resolution. Errington v. Mansfield Tp. Bd. of Ed., 100 N.J. Super. 130 (App. Div. 1968). Although that case involved that case involved civil litigation and its facts are not analogous, the rationale of the court is significant:
The trial court emphasized the word "duties" in reaching its conclusion and strictly interpreted it to exclude the adoption of a resolution to authorize the defense of a board member sued for libel. We would not construe the expression "in the performance of their duties" so narrowly. Such a strict construction of "duties" would exclude all tortious conduct by a board member, because it is never a "duty" of a board member to commit a tort. It would also exclude all invalid resolutions because it is not a "duty" of a board member to pass an invalid resolution. The purpose of the new statute is to make manifest the implied power of boards of education to provide for the legal defense of a member of the board who is sued individually for some action taken by him in furtherance of his prescribed duties. [at 137]
See also, Cobb v. City of Cape May, 113 N.J. Super. 598 (Law Div. 1971), where in the context of the expenses arising out of a civil libel action, Judge Horn noted:
* * * He [public officer] should not be constantly apprehensive in the performance of his duties that he may be involved in litigation which might prove expensive to himself presonally. * * * Such concern would have a tendency to stifle debate and curtail appropriate action in matters of public concern. [at 602]
*595 In light of the liberal construction applied in civil litigation under common law and the statute, does the defense of a criminal charge arising out of alleged illegal acts of extortion while plaintiff was a board member warrant the payment of his legal fees and expenses incurred in defense of that charge?
The federal crime upon which Powers was indicted does not necessarily require that a defendant be a public official for conviction thereunder. Nevertheless, the indictment alleges his official position as a member of the board of education, and the asserted criminal conduct under the factual context of the trial proofs did arise out of the performance of his functions as a member of the board.
It is manifest, on the other hand, that the unlawful acts as alleged in the criminal prosecution were not encompassed within the prescribed duties of Powers as a board member. They were clearly unlawful and beyond the proper good faith performance of his public functions. The fact, however, that the alleged criminal acts were obviously beyond the prescribed duties of a board member does not in itself immunize the board from the statutory liability; for such a construction would exclude all criminal conduct and frustrate the express intent of the legislature. Cf. Errington v. Mansfield Tp. Bd. of Ed., 100 N.J. Super. 130, 137 (App. Div. 1968).
Nevertheless, it must be noted that the statute not only requires that the criminal action involve an act or omission arising out of the performance of the board member's duties but also in the course of the same.
This statutory language is identical to that employed in the Workmen's Compensation Act as a prerequisite to a compensable accident. As construed in the context of a workmen's compensation claim, an accident arising out of employment signifies that "it results from a risk `reasonably incidental' thereto," and arising in the course of employment connotes that "it occurs within its period at a place where the employee may properly be and while he is fulfilling *596 the duties of his employment `or doing something incidental to it.'" Tocci v. Tessler & Weiss, 28 N.J. 582, 586 (1959); Bryant, Adm'x. v. Fissell, 84 N.J.L. 72, 76 (Sup. Ct. 1913); Belyus v. Wilkinson, Gaddis & Co., 115 N.J.L. 43, 47 (Sup. Ct. 1935); Argroe v. Marinaccio, 63 N.J. Super. 438, 442 (App. Div. 1960); Malone, "Workmen's Compensation," 8 Rutgers L. Rev. 97 (1953).
Although the foregoing construction of the Workmen's Compensation Act involves a different subject matter with a different legislative purpose, the cases thereunder are helpful to demonstrate that the indemnity statute incorporates a dual requirement in order to establish responsibility in the board of education. The two-fold criteria that the criminal charge arise out of and in the course of the duties of the board member must be given full significance. Statutes should be accorded that construction which will give effect to every word expressed by the Legislature. Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64, 77 (1952); Behnke v. New Jersey Highway Authority, 13 N.J. 14, 24 (1953); Mahoney v. Parole Bd. of New Jersey, 10 N.J. 269, 275 (1952), app. dism. 344 U.S. 871, 73 S.Ct. 173, 97 L.Ed. 675 (1952); Lynch v. Edgewater, 8 N.J. 279, 286 (1951); Hoffman v. Hock, 8 N.J. 397, 406 (1952); Oldfield v. New Jersey Realty Co., 1 N.J. 63, 68 (1948).
Thus, if the conduct giving rise to the charge fails to meet either the requirement that it arise out of the performance of the public duties or in the course of the performance of those duties, the obligation to pay for the legal defense remains with the individual and cannot be imposed as a public burden. Clearly, where the charge involves the criminal conduct of extortion which may originate out of the performance of the duties of the individual as a member of the board, it cannot be said to have been accomplished in the course of carrying out those duties.
Some instances come to mind in which the conduct, though criminal, arises out of and in the course of performance of the duties of a board of education member or other *597 public official. N.J.S.A. 18A:38-5.1 makes it a misdemeanor for a member of a board of education to vote to exclude a child from a public school because of race, creed, color, etc.; N.J.S.A. 18A:6-5 proscribes a religious test for employment in a public school system and imposes a criminal penalty for any person violating the same; under N.J.S.A. 2A:135-1 a public officer who wilfully refuses or neglects to perform any duty imposed upon him by law is guilty of a misdemeanor, and N.J.S.A. 2A:135-5 makes it a crime for any member of a board of education to wilfully and knowingly vote for the disbursement of public money or the creation of an obligation in excess of appropriations.
Although the acts or omission in the foregoing examples may be unlawful and therefore subject to criminal sanctions, the successful defense of a prosecution for the same would invoke the indemnity under the statute because the gravamen of the litigation took place when and where the individual performed his duties and while he was fulfilling the duties of a board member. Such is not the case where the charge, as herein, involves the criminal conduct of extortion which was carried on outside the course or scope of the performance of Powers' duties as a Board member as to time, place and subject matter.
The liberal approach in applying the statute in civil litigation so as not to inhibit a board member from freely expressing himself and acting for the public good without fear of economic loss has no relevancy in the context of the criminal conduct in this case. No member of a board of education should be encouraged to engage in acts which may constitute crimes by the assurance that an acquittal on the charge will permit him to saddle defense costs upon the taxpayers of the community.
In connection with criminal conduct the facts should be analyzed strictly rather than liberally, so that reimbursement of legal fees and expenses should only ensue when the circumstances *598 are such as to fit clearly within the legislative limitations. The facts in this case do not qualify in that respect. Plaintiff is not entitled to reimbursement for his legal fees and expenses connected with the defense of the federal criminal charge.
Judgment will be entered in favor of defendant.