272 N.J. Super. 391 (1994)
640 A.2d 302
LOUIS THOMAS SCIRROTTO, A/K/A MARK SCIRROTTO, PLAINTIFF-APPELLANT,
v.
WARREN HILLS BOARD OF EDUCATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1994.
Decided April 15, 1994.
*392 Before Judges SHEBELL, LONG and LANDAU.
Lawrence VanWess argued the cause for appellant (Klausner, Hunter, Cige & Seid, attorneys; Mr. VanWess, on the brief).
Sharon H. Moore argued the cause for respondent (Sharon H. Moore and Gebhardt & Kiefer, attorneys; Deborah B. Rosenthal, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This is an appeal from an order granting summary judgment to defendant Warren Hills Board of Education (Board) on the complaint of plaintiff Louis Thomas Scirrotto. The ruling had the effect of dismissing Scirrotto's demand under N.J.S.A. 18A:16-6.1 for reimbursement of legal fees incurred in successfully defending *393 against criminal charges of bribery, threats and other improper influence in official matters, and compounding. We affirm.
These are the facts. Scirrotto had been employed as a history teacher at the Warren Hills Regional High School from 1980 until 1984, when the Board announced it would not renew his employment contract, thus denying him tenure. Scirrotto informed school officials that he would contest the denial of tenure and made a written request for the specific reasons for such denial. Upon receipt of an explanation with which he differed, Scirrotto unsuccessfully appealed to the Board at a public session hearing for reconsideration of his employment status. Thereafter, he scheduled a meeting with the Commissioner of Education for June 11, 1984.
Prior to that meeting, Scirrotto telephoned John Mulhern, the superintendent of the Warren Hills School District, to discuss the Board's decision not to renew his teaching contract. During that conversation, Scirrotto stated, "that he knew of a problem in the school district and that the problem was more serious than what he called the `Yrigoyen matter'[1]." Mulhern responded that if Scirrotto knew of any criminal activity involving teachers or children it should be reported to the prosecutor's office. Scirrotto, however, indicated that he did not want to reveal the information but might well leak it out. He suggested that they should discuss the matter further. Mulhern informed an assistant prosecutor of Scirrotto's possible knowledge of events more serious than the Yrigoyen matter. The prosecutor's office then arranged to intercept conversations between Scirrotto and Mulhern or Fluck, the school principal, by means of an electronic listening device.
On June 7, 1984, Scirrotto telephoned Fluck to inform him that he was displeased with a newspaper account of his dismissal, *394 adding, "[r]emember I have the Tostos note[2]." At the time Fluck did not know what the Tostos note was and agreed to meet with Scirrotto the next day. According to Scirrotto's certification, on the morning of June 8, 1984, Fluck asked Scirrotto to meet with him after school to discuss a newspaper article dealing with a student-parent demonstration at the public hearing concerning his denial of tenure. Scirrotto did not know that the meeting was being recorded.[3]
Scirrotto stated at the June 8th meeting that he had information as explosive as the "Yrigoyen affair" and indicated that he would go public with the information unless he was rehired. He also said, "I'll use whatever I need to use, Bob [Fluck], to get reinstated in this district for tenure." Fluck wanted to know whether there was a problem similar to the Yrigoyen affair so that he could report it to the prosecutor's office for investigation. Scirrotto, however, refused to reveal the information until he was assured of tenure.
Fluck gave the tape to the prosecutor's office. Based on its content, the Warren County Grand Jury returned an indictment charging defendant with bribery in official matters, N.J.S.A. 2C:27-2b and 2d, with threats and improper influence in official matters, N.J.S.A. 2C:27-3a(2), and with the crime of compounding, N.J.S.A. 2C:29-4. Following a jury trial, Scirrotto was found guilty of bribery. The other charges were dismissed during trial on defendant's motion for judgment of acquittal. We later reversed Scirrotto's bribery conviction, holding that there was insufficient evidence from which a reasonable jury could find that a *395 "benefit" had been offered by Scirrotto to Fluck or Mulhern, or to the school system by which they were employed.
On June 17, 1989, Scirrotto filed his Law Division complaint for reimbursement of attorney's fees. The Board denied N.J.S.A. 18A:16-6.1 liability, reasoning that the incident complained of did not arise out of or in the course of Scirrotto's teaching duties.
On cross motion for summary judgment, the motion judge granted the Board's summary judgment motion and dismissed Scirrotto's complaint. The judge approached the issue this way:
[S]chool officials, and in particular the principal, would have been remiss and in violation of the law if they didn't submit this to the proper authorities for investigation. The fact that the prosecutor's office saw fit to indict Mr. Scirrotto as opposed to pursuing and [sic] investigation to find out who actually has acted improperly with students that would be tantamount to the Yrigoyn [sic] affair is not the concern of this Court, but rather the issue is whether Mr. Scirrotto, in dangling the carrot, if you will, and seeking to entice the board to reverse its position and grant tenure as the price that it would have to pay to obtain this information, was acting in his capacity of a teacher, is the issue.
The judge then concluded that nothing in the record supported the proposition that, when Scirrotto made the statements which ultimately led to his indictment, he "was acting in the capacity of a teacher in the employ of the school system, and that anything that was said during the course of that meeting would have been in the role of his capacity as a teacher". We agree with this assessment.
On appeal, Scirrotto contends that the motion judge erroneously focused on the content of his conversation with Fluck, and that consideration properly should have centered on the purpose of the meeting with Fluck, and the fact that Scirrotto was required to attend the meeting with Fluck as a function of his job.
The legal cost indemnification provision relied on by Scirrotto is N.J.S.A. 18A:16-6.1, which states:
Should any criminal action be instituted against any such person for any such act or omission and should such proceeding be dismissed or result in a final disposition in favor of such person, the board of education shall reimburse him for the cost of defending such proceeding, including reasonable counsel fees and expenses of the original hearing or trial and all appeals.
*396 The "such person" referred to in Section 16-6.1 is the same as provided for in N.J.S.A. 18:16-6, governing indemnity of school board employees and officers from costs of civil actions:
Whenever any civil action has been or shall be brought against any person holding any office, position or employment under the jurisdiction of any board of education, ... for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment .. . the board shall defray all costs of defending such action....
[(emphasis added)].
Thus, to be entitled to reimbursement, Scirrotto's actions must have arisen out of and in the course of performance of the duties of his employment. See Powers v. Union City Bd. of Ed., 124 N.J. Super. 590, 595, 308 A.2d 71 (Law Div. 1973) aff'd o.b., 127 N.J. Super. 294, 317 A.2d 373 (App.Div.), certif. denied, 65 N.J. 575, 325 A.2d 709 (1974).
In Powers, supra, a member of the Union City Board of Education was indicted under 18 U.S.C.A. § 1951 for conspiracy and extortion of contractors who did business with the Board. Powers, supra, 124 N.J. Super. at 592, 308 A.2d 71. Powers was acquitted of all counts and filed suit for recovery of litigation costs under N.J.S.A. 18A:12-20, an indemnity provision applicable to board of education members, which is similar to Sections 16-6 and 16-6.1. Powers, supra, 124 N.J. Super. at 591, 308 A.2d 71.
Under the statute, acquittal is conclusive for purposes of determining the right to indemnity. Powers, supra, 124 N.J. Super. at 592, 308 A.2d 71. The issue, however, is "whether the criminal charge of which defendant was acquitted was for any act or omission arising out of and in the course of the performance of his duties...." Id. at 593, 308 A.2d 71. The facts underlying the criminal charge should be "analyzed strictly rather than liberally, so that reimbursement of legal fees and expenses should only ensue when the circumstances are such as to fit clearly within the legislative limitations." Id. at 598, 308 A.2d 71. As a matter of policy, a public employee should not be "encouraged to engage in acts which may constitute crimes by the assurance that an acquittal *397 on the charge will permit him to saddle defense costs upon the taxpayers of the community." Id. See also Errington v. Mansfield Tp. Bd. of Ed., 81 N.J. Super. 414, 420, 195 A.2d 670 (App. Div. 1963), rev'd and remanded on other grounds, 42 N.J. 320, 200 A.2d 492 (1964), decision following remand, 100 N.J. Super. 130, 241 A.2d 271 (App.Div. 1968) (focusing on the contents of an alleged defamatory letter and the board member's motivation for writing it to determine whether the board member was "performing in good faith a duty of his office or position in furtherance of the work of the board for which he was purportedly acting.").
As we view it, Scirrotto's indictment arose by reason of his statements, the contents of which are not disputed, aimed at evoking "a response from the administration", and did not arise out of attending the meeting with Fluck. The location was merely incidental. It surely was not part of Scirrotto's duties (using his words) "to play dirty pool" or to represent that he had "concrete bad" evidence of conduct analogous to the Yrigoyen affair, which he was willing to withhold in exchange for tenure.
The thrust of the indictment was to charge Scirrotto with bribery by offering to confer upon Mulhern and Fluck "a benefit as consideration for their recommendation that defendant be rehired as a teacher in return for his withholding from the media and others certain alleged information in his possession allegedly relating to immoral or illegal activities by teachers or staff members of the school system." It was the statements forming the basis of the indictment upon which the judge properly focused to determine whether Scirrotto's actions came within the ambit of N.J.S.A. 18A:16-6.1. See Errington, supra, 81 N.J. Super. at 420-21, 195 A.2d 670.
We have previously stated that for the acts complained of to arise out of and in the course of the duties of employment,
[t]he officer must have been acting in a matter which the corporation has an interest, he must have been acting in the discharge of a duty imposed or authorized by law and he must have acted in good faith.
[Errington, supra, 81 N.J. Super. at 420, 195 A.2d 670 (quoting Maitland v. Town of Thompson, 129 Conn. 186, 27 A.2d 160, 162 (Conn. 1942))].
*398 Scirrotto's statements, made in an apparent effort to induce Fluck and Mulhern to recommend him for tenure, were made to a superior at a meeting, while he was a teacher, and thus arguably "in the course of" the duties of employment. However, the conduct did not arise out of performance of the duties of his employment as a high school history teacher, any more than if he had indisputably punched Fluck during such a meeting, but was thereafter acquitted of criminal assault charges. Scirrotto acknowledged that the purpose of his statements at the June 8th meeting was solely to evoke a response from the administration in the hope of acquiring tenure. In his words, "I swear on my father, I'll use whatever I need to use, Bob, [Fluck] to get reinstated in this district for tenure." Acquiring tenure by the threatened use of allegations of criminal sexual behavior involving children and teachers is not conduct in good faith arising out of and in the course of performing the duties of employment contemplated by the Legislature in enacting N.J.S.A. 18A:16-6.1.
Affirmed.
NOTES
[1] The "Yrigoyen matter" involved the actions of a Warren Hills School teacher toward students which resulted in his convictions for aggravated criminal sexual contact, N.J.S.A. 2C:14-3 and endangering the welfare of children, N.J.S.A. 2C:24-4.
[2] The Tostos note concerned a proposed meeting between two female students and a teacher for a sexual encounter.
[3] It is not clear from the record who sought the January 8, 1984 meeting and whether the meeting was recorded solely on Fluck's initiative or directly by the prosecutor's office. For purposes of the summary judgment motion, however, we resolve the issue most favorably to the non-moving party, Scirrotto, and assume that the meeting took place and was recorded at Fluck's direction. See Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 74, 110 A.2d 24 (1954).