694 A.2d 543

PAUL NORMAN BOWER AND WILLS O'NEILL & MELLK, PLAIN-
TIFFS–RESPONDENTS, v. BOARD OF EDUCATION OF THE
CITY OF EAST ORANGE, DEFENDANT–APPELLANT.

———

PAUL NORMAN BOWER, PETITIONER–RESPONDENT, v.
BOARD OF EDUCATION OF THE CITY OF EAST
ORANGE, RESPONDENT–APPELLANT.

Argued January 22, 1997—Decided June 10, 1997.

*Mary C. Jacobson,* Assistant Attorney General, argued the cause for appellant New Jersey State Board of Education (*Peter Verniero,* Attorney General of New Jersey, attorney; *Ms. Jacobson* and *Mary F. Rubinstein,* Deputy Attorney General, on the briefs).

*Ronald S. Sampson,* Orange, argued the cause for appellant Board of Education of the City of East Orange (*Love & Randall,* attorneys).

*Sanford Oxfeld,* Newark, argued the cause for respondent Paul Norman Bower (*Balk, Oxfeld, Mandell & Cohen,* attorneys; *Gail Oxfeld Kanef,* on the brief).

*Arnold M. Mellk,* Princeton, argued the cause for respondents Paul Norman Bower and Wills, O'Neill & Mellk (*Wills, O'Neill & Mellk,* attorneys).

*David W. Carroll*, Lawrenceville, submitted a brief on behalf of amicus curiae, Montgomery Township Board of Education (*Carroll & Weiss*, attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal concerns the right of Paul Bower [1], a public school teacher indicted on various charges alleging that he sexually abused three of his pupils during the school day and on school premises, to indemnification from the East Orange Board of Education for his legal expenses after all charges against him were dismissed. The relevant statutes, *N.J.S.A.* 18A:16–6 and –6.1, provide that indemnification is mandatory if the charges are dismissed or result in a favorable final disposition and if the "act or omission" on which the criminal charges are predicated arises out of and in the course of the performance of the duties of employment.

The criminal charges having been dismissed before trial, no evidence was adduced in the criminal proceeding, or in the civil proceedings seeking indemnification, concerning whether *any* predicate acts or omissions (aside from Bower's daily presence in his classroom) had occurred that could serve as the basis for establishing the second prong of the statutory test for indemnification, that the act or omission arose out of and in the course of the duties of employment.

The parties to this appeal agree that the second prong of the statute should not be tested against the alleged acts of sexual

---

[1] We note that Paul Bower died on September 25, 1992 and that substitution of the proper party, as contemplated by *Rule* 4:34–1(b), has not occurred. References throughout this opinion to arguments advanced by Bower shall be deemed to include the contentions of Wills, O'Neill & Mellk, the law firm that was a co-plaintiff in the Law Division proceeding and that represented Bower in the underlying criminal matter.

abuse, because such an application of the statute would deny indemnification to any school employee forced to incur legal expenses in the successful defense of false charges of criminal conduct that, if true, could not possibly have occurred in the course of performance of the duties of employment. Bower contends that because no "act or omission" has been proved, the criminal charges must necessarily be understood to have arisen solely because of and in the course of his employment as a teacher. The East Orange Board of Education (East Orange) and the New Jersey State Board of Education (State Board) both contend that Bower bears an additional burden of refuting or explaining the charges against him to an extent sufficient to verify that he satisfies the statutory test.

Bower's administrative appeal from East Orange's denial of indemnification resulted in a State Board decision affirming that denial on the basis of Bower's failure to satisfy the statutory criteria. A separate proceeding instituted in the Law Division by Bower's attorneys resulted in a judgment granting indemnification to the extent of $30,000 in attorney fees and $2,500 in disbursements. (Although the question is not raised, the Law Division action should have been dismissed because the Commissioner of Education has primary jurisdiction to hear and determine all controversies arising under the school laws. *N.J.S.A.* 18A:6–9; see *Dore v. Board of Educ.*, 185 *N.J.Super.* 447, 452, 449 *A.*2d 547 (App.Div.1982)). The Appellate Division consolidated the appeals, and in a published opinion, 287 *N.J.Super.* 15, 670 *A.*2d 106 (1996), a divided panel of that court reversed the judgment of the State Board and affirmed the judgment of the Law Division. *Id.* at 33, 670 *A.*2d 106. East Orange and the State Board appeal as of right. *R.* 2:2–1(a)(2).

I

The Appellate Division's majority opinion contains a thorough summary of the facts and procedural history underlying this appeal:

On February 10, 1987, Bower was indicted on four counts of aggravated sexual assault in violation of *N.J.S.A.* 2C:14–2 and three counts of endangering the welfare of children in violation of *N.J.S.A.* 2C:24–4. Testimony before the grand jury from two children and their parents and a statement from a third child described incidents of sexual abuse by Bower. The incidents allegedly took place during school hours in a bathroom connected to Bower's classroom in the Ashland School. Each child was a student of Bower. The Board suspended Bower without pay on March 3, 1987.

On October 11, 1988, Judge Falcone dismissed the indictment without prejudice. The State's unpreparedness for trial occasioned the dismissal. Bower returned to work in a non-teaching assignment on October 17, 1988. On March 15, 1989, an Essex County grand jury returned a second indictment against Bower on the same charges. On March 20, 1989, the Board of Education again suspended Bower. Judge Hazelwood dismissed the second indictment with prejudice on July 3, 1990.

On March 30, 1989, prior to dismissal of the second indictment, Bower filed a petition with the Commissioner of Education seeking indemnification from the Board of his legal fees and costs incurred in defending against prosecution of the first indictment, pursuant to *N.J.S.A.* 18A:16–6.1. The Commissioner referred the matter to the Office of Administrative Law.

Following a hearing, the Administrative Law Judge filed a written decision recommending that the Commissioner deny Bower's request for $20,340.95 in legal fees. On the record before him, the A.L.J. was unable to determine whether the children allegedly abused were Bower's students and whether the alleged abuse took place on school property during school hours. Consequently, the A.L.J. determined that Bower could not establish the nexus required by *N.J.S.A.* 18A:16–6.1, that the conduct alleged in the charges against him arose "out of and in the course of the performance of [his] duties" as a teacher. Furthermore, the A.L.J. found that dismissal of the first indictment without prejudice was not a "final disposition in favor" of Bower as required by *N.J.S.A.* 18A:16–6.1. The Commissioner of Education adopted the A.L.J.'s findings and dismissed the petition on August 10, 1990.

On August 14, 1990, Bower appealed the Commissioner's dismissal to the State Board of Education. As noted, the second indictment was dismissed on July 3, 1990. The State Board of Education remanded the matter to the A.L.J. for determination in light of the dismissal of the second indictment, instructing that

[o]n remand, Petitioner has the burden of establishing 1) a nexus between the alleged conduct forming the basis of the charges and the performance of his duties in the district so as to support a finding that the criminal actions against him involved alleged acts or omissions arising out of and in the course of the performance of his duties, and 2) a favorable disposition of the criminal charges.

On September 27, 1991, after considering a supplemented record, the A.L.J. again recommended that Bower's request for indemnification be denied. Although the A.L.J. concluded that the second dismissal constituted a final favorable disposition, Bower was unable to satisfy the A.L.J. that the conduct alleged in the criminal charges arose "out of the performance of his duties as a teacher". The A.L.J. noted:

At most, the only thing that can be said is that Bower's accusers are his former students and that the locale of the alleged misconduct is on school property. None of the proofs supply the crucial element that the charges are connected with his teaching assignment or that Bower was engaged in carrying out his official duties.

The Commissioner adopted the A.L.J.'s recommendation on November 12, 1991, emphasizing that Bower failed to

explain[ ] why he was in the bathroom with any or all of the three boys in question. Neither is there any testimony or evidence proffered in this remand suggesting how his behavior in regard to any of these charges, or denial of same, is legitimately linked to his *bona fide* teaching responsibilities. (emphasis in original).

Bower again appealed to the State Board of Education. On August 4, 1994, the State Board affirmed the Commissioner's ruling. The State Board reemphasized that Bower failed to meet his "affirmative burden" of establishing the required nexus between the conduct out of which the charges arose and the performance of his duties as a teacher. The State Board stated:

The record, as supplemented on remand, indicates only that the alleged conduct occurred in a bathroom adjoining petitioner's kindergarten classroom. There is no indication in the record as to whether this facility was for the exclusive use of students or whether teachers also used the facility.... Nor is there anything to show that any of his teaching duties required that he accompany the students into the facility. Bower filed a notice of appeal to this court on August 23, 1994.

\* \* \* \* \* \* \* \*

On March 19, 1991, while Bower was pursuing his administrative remedy, Bower's attorneys filed suit on behalf of Bower and themselves in the Law Division, seeking a judgment of $41,024 in attorney fees and $2,500 for disbursements, representing the work done in defending Bower against both indictments. Judge Paley concluded that the criminal charges filed against Bower did, indeed, arise out of the performance of his duties because Bower's "involvement with those children was produced by his contact with them ... as a teacher." On March 31, 1994, Judge Paley awarded $2,500 for disbursements and $30,000 for attorney fees to plaintiffs.

[287 *N.J.Super.* at 18–21, 670 *A.*2d 106 (footnotes omitted).]

## II

*N.J.S.A.* 18A:16–6, the statute governing indemnification of employees of local boards of education in *civil* suits, reads:

Whenever any civil action has been or shall be brought against any person holding any office, position or employment under the jurisdiction of any board of education, including any student teacher or person assigned to other professional pre-teaching field experience, *for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching*

*or other assignment to professional field experience,* the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and said board may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

[*N.J.S.A.* 18A:16–6 (emphasis added).]

*N.J.S.A.* 18A:16–6.1, the statute providing for indemnification in *criminal* actions, refers back to the section dealing with indemnification in civil actions. *Scirrotto v. Warren Hills Bd. of Educ.,* 272 *N.J.Super.* 391, 396, 640 *A.*2d 302 (App.Div.1994). The criminal indemnification statute provides:

Should any criminal action be instituted against any such person for any such act or omission and should such proceeding be dismissed or result in a final disposition in favor of such person, the board of education shall reimburse him for the cost of defending such proceeding, including reasonable counsel fees and expenses of the original hearing or trial and all appeals.

[*N.J.S.A.* 18A:16–6.1.]

█ The Appellate Division concluded, and the parties agree, that the "such act or omission" language in *N.J.S.A.* 18A:16–6.1 means any act or omission "arising out of and in the course of the performance of the duties of such office" pursuant to *N.J.S.A.* 18A:16–6. 287 *N.J.Super.* at 22, 670 *A.*2d 106. Thus, *N.J.S.A.* 18A:16–6.1, read in connection with the complimentary provisions of *N.J.S.A.* 18A:16–6, prescribes a two-part standard for determining whether board of education employees are entitled to indemnification of counsel fees and expenses incurred in the defense of criminal charges: (1) any act or omission on which the criminal charges are based must arise "out of and in the course of performance of the duties" of the position held by the employee, and (2) the charges must either be dismissed or result in a final disposition favorable to the employee.

The parties agree that dismissal of the second indictment with prejudice constitutes a final disposition favorable to Bower. The only issue remaining unresolved is whether the criminal charges of aggravated sexual assault and endangering the welfare of children were based on "acts or omissions" that arose "out of and in the course of the performance of [Bower's] duties" as a teacher.

Only a handful of published opinions have implicated the civil and criminal indemnification statutes applicable to board of education employees, and those cases shed little light on the issue before us. Typically, the predicate conduct is sufficiently well-defined so as to simplify the inquiry about whether the civil claim or criminal charge was based on an act or omission arising out of and in the course of performance of the duties of office. Thus, in *Titus v. Lindberg*, 49 *N.J.* 66, 228 *A.*2d 65 (1967), we acknowledged the responsibility of the Middletown Township Board of Education to indemnify a school principal held liable for negligence in failing to supervise a thirteen-year-old student who seriously injured another student by striking him with a paper clip shot from an elastic band. We noted that the indemnification statute then in effect also required as a condition of indemnity that the employee "must be acting in the discharge of his duties within the scope of his employment," a condition we described as "clearly and fully satisfied here." *Id.* at 79–80, 228 *A.*2d 65.

Another early decision applying a prior version of the indemnification statutes at issue here is *Errington v. Mansfield Township Board of Education*, 81 *N.J.Super.* 414, 195 *A.*2d 670 (App.Div. 1963), *rev'd and remanded on other grounds*, 42 *N.J.* 320, 200 *A.*2d 492 (1964), *decision following remand* 100 *N.J.Super.* 130, 241 *A.*2d 271 (App.Div.1968). In *Errington*, the president of a local school board, without consulting with a majority of the board, published a letter in a local newspaper that the plaintiff alleged was defamatory. After the plaintiff filed a libel action against the board president, a majority of the other board members adopted a resolution reciting that the president had acted in the board's behalf in writing the letter and authorizing her legal defense by the board's counsel. The plaintiff then filed a libel suit against those board members, and the board subsequently adopted a resolution authorizing their defense as well. The plaintiff filed a new action to restrain the board from expending public funds in defense of either libel suit. The Law Division granted plaintiff's motion for summary judgment, and the Appellate Division affirmed. 81 *N.J.Super.* at 418, 421, 195 *A.*2d 670. This Court

reversed and remanded for trial so that the issue of the board's authority to defend the libel actions could be resolved on the basis of a more complete record. 42 *N.J.* at 322, 200 *A.*2d 492. On remand, the Appellate Division reiterated its earlier conclusion that the resolution approving defense of the board president was unauthorized because she had not written the allegedly defamatory letter in the course of the performance of her duties as a member or as the president of the board of education. 100 *N.J.Super.* at 135, 241 *A.*2d 271. The court, however, rejected the trial court's conclusion that the board members' adoption of the invalid resolution authorizing defense of the board president had not arisen in the course of performance of the board members' duties, observing that "such a strict construction of 'duties' would exclude all tortious conduct by a board member, because it is never a 'duty' of a board member to commit a tort." *Id.* at 137, 241 *A.*2d 271. The court held that the board members had adopted the invalid resolution in the course of the performance of their board duties and therefore were entitled to be defended in the second libel suit at the board's expense. *Id.* at 137–38, 241 *A.*2d 271.

*Powers v. Union City Board of Education,* 124 *N.J.Super.* 590, 308 *A.*2d 71 (Law Div.1973), is the earliest of two prior decisions applying the board of education indemnification statute to criminal charges. Powers, a member of the Union City Board of Education, was indicted with four co-defendants for extorting money from contractors that did business with the board, allegedly requiring suppliers to pay kickbacks for the privilege of doing business and to insure prompt payment of invoices. *Id.* at 592, 308 *A.*2d 71. The evidence against Powers indicated that he had served on the board's maintenance committee, which had recommended the award of board contacts; that he had been partially responsible for supervision of the board's architect, whose contract and kickbacks were involved in the criminal charges; and that he had participated with another board member in the monthly calculation of the kickbacks and in dividing them among the board members. *Id.* at 592–93, 308 *A.*2d 71. Powers denied all allega-

tions. *Id.* at 592, 308 *A.*2d 71. Although two co-defendants were convicted, Powers was acquitted of all charges. *Ibid.* Nevertheless, the Law Division denied Powers' claim for reimbursement of his legal expenses. *Id.* at 598, 308 *A.*2d 71. The court noted that reimbursement should not be denied merely because Powers allegedly engaged in criminal conduct that was necessarily beyond the scope of his prescribed duties, because so strict a construction of the statute would frustrate the legislative intent. *Id.* at 595, 308 *A.*2d 71. But the court concluded that the specific conduct on which the extortion charges were based had not occurred in the course of performance of Power's duties as a board member. *Id.* at 597, 308 *A.*2d 71.

*Scirrotto, supra,* 272 *N.J.Super.* 391, 640 *A.*2d 302, is the second decision applying the board of education indemnification statute to criminal charges. The criminal charges against Scirrotto arose out of events that occurred after the local school board had declined to renew Scirrotto's employment as a history teacher, thereby denying him tenure. *Id.* at 393, 640 *A.*2d 302. Subsequently, during a meeting requested by the high-school principal on the pretext of discussing a student-parent demonstration related to Scirrotto's denial of tenure, Scirrotto threatened to disclose to the public information that would embarrass school officials, but represented that he would withhold disclosure if he were awarded tenure. *Id.* at 394 & n. 3, 640 *A.*2d 302. Unknown to Scirrotto, the conversation was recorded and the tape was released to the prosecutor's office. *Id.* at 394, 640 *A.*2d 302. Scirrotto was indicted for bribery in official matters, for threats and improper influence in official matters, and for the crime of compounding. *Ibid.* Scirrotto was convicted of bribery after a jury trial, and the remaining charges were dismissed on his motion for acquittal. *Ibid.* In an unreported opinion, the Appellate Division reversed Scirrotto's bribery conviction because insufficient evidence had been adduced to prove that Scirrotto had offered a "benefit" to school officials in return for tenure. *Id.* at 394–95, 640 *A.*2d 302. This Court affirmed the dismissal of the bribery conviction. 115 *N.J.* 38, 48–49, 556 *A.*2d 1195 (1989).

Scirrotto then filed suit seeking reimbursement of counsel fees incurred in defense of the criminal charges. *Scirrotto, supra,* 272 *N.J.Super.* at 395, 640 *A.*2d 302. The Law Division granted the board's motion for summary judgment, reasoning that the statements made by Scirrotto and intended to influence the principal to grant him tenure were not made in the course of performance of his duties as a history teacher. *Ibid.* The Appellate Division agreed, reasoning that "[i]t surely was not part of Scirrotto's duties ... 'to play dirty pool' or to represent that he had 'concrete bad' evidence of conduct ... [that] he was willing to withhold in exchange for tenure." *Id.* at 397, 640 *A.*2d 302. "Acquiring tenure by the threatened use of allegations of criminal sexual behavior involving children and teachers is not conduct in good faith arising out of and in the course of performing the duties of employment." *Id.* at 398, 640 *A.*2d 302.

To support the conclusion that Bower's claim for indemnification should be denied, the dissenting member of the Appellate Division panel asserted that the board of education indemnification statute should be construed in a manner consistent with the Legislature's recent amendment, *L.* 1985, *c.* 457, of the indemnification statute applicable to police officers, *N.J.S.A.* 40A:14–155, an amendment intended in part to deny reimbursement of legal expenses to policemen for defense of criminal charges arising solely from a claimant's status as a police officer. 287 *N.J.Super.* at 34, 670 *A.*2d 106 (Landau, J.A.D., dissenting). That amendment apparently was enacted in response to this Court's decisions in *Valerius v. City of Newark,* 84 *N.J.* 591, 423 *A.*2d 988 (1980), and *Moya v. City of New Brunswick,* 90 *N.J.* 491, 448 *A.*2d 999 (1982). *Bower, supra,* 287 *N.J.Super.* at 34, 670 *A.*2d 106. (Landau, J.A.D., dissenting).

In *Valerius, supra,* a police officer and his attorneys brought suit for the reimbursement of legal fees incurred in successfully defending against three criminal charges. 84 *N.J.* at 594, 423 *A.*2d 988. Those charges arose from allegations that Valerius and another officer had seized $23,000 in a staged drug bust and had

kept the money for personal use. *Id.* at 593, 423 *A.2d* 988. Valerius was acquitted of all charges against him, and sued the city for indemnification under *N.J.S.A.* 40A:14–155. *Id.* at 594, 423 *A.2d* 988. That statute read:

> Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.
>
> [*Id.* at 593, 423 *A.2d* 988 (quoting *N.J.S.A.* 40A:14–155).]

The Court noted that the charges against Valerius involved his status as a police officer, observing that if the conduct charged had occurred, it would have constituted "a perversion and prostitution of his duties as a police officer." *Id.* at 595–96, 423 *A.2d* 988. The Court explained that a conviction would have established that his conduct "neither arose out of nor was incidental to the performance of his duties" and that therefore Valerius would not have qualified for indemnification. *Ibid.* However, as Valerius had been acquitted, no basis existed for a conclusion that he had improperly used his status as a police officer. *Id.* at 596–97, 423 *A.2d* 988. The Court noted that " '[p]olice officers, by the very nature of their duties, are exposed to a substantial risk that . . . civil or criminal actions will be initiated, regardless of their merits.' " *Id.* at 597, 423 *A.2d* 988 (quoting *Van Horn v. City of Trenton*, 80 *N.J.* 528, 536–37, 404 *A.2d* 615 (1979)). It then determined that the legislative intent was to protect the officer and require his indemnification if he was acquitted and the action arose out of or was incidental to the performance of his duties. *Id.* at 598–99, 423 *A.2d* 988. The Court held that Valerius therefore was entitled to indemnification. *Id.* at 600, 423 *A.2d* 988.

Two years later, we decided *Moya v. New Brunswick, supra.* Moya and other officers were charged with participating in a

burglary ring. 90 *N.J.* at 495, 448 *A.*2d 999. The indictments charged that Moya, while "acting under color of [his] office," had assisted other officers in breaking and entering "in police uniforms, in police vehicles and while performing the duties for which [their] office was created." *Id.* at 496, 448 *A.*2d 999. A jury found Moya not guilty of two of the three charges. *Ibid.* The third charge was dismissed on motion of the prosecutor. *Ibid.* Moya and his attorney then instituted suit against the city for indemnification. *Ibid.*

Affirming the Appellate Division decision granting indemnification, this Court held that the charges against Moya, which were conclusively assumed to be false, were primarily made because he was a police officer. *Id.* at 498, 448 *A.*2d 999. Noting that indemnification would serve the legislative intent "to increase the morale of police departments ... and to encourage the effective pursuit of police duties ... by providing counsel to police officers who are the subject of charges," the Court concluded that this legislative purpose extended beyond the literal meaning of the statute. *Id.* at 500, 448 *A.*2d 999 (citations omitted). The "unique vulnerability of a police officer" to false accusations was instrumental in the Court's decision. *Id.* at 500–01, 448 *A.*2d 999. The Court noted that police officers would "strongly resent" nonindemnification of an exonerated colleague when, in fact, that officer's sole crime "was being a police officer." *Id.* at 506, 448 *A.*2d 999. The majority, joined by Justice Pashman, concurring, held that Moya was entitled to indemnification. *Id.* at 511, 518, 448 *A.*2d 999. (Pashman, J., concurring).

The dissenting members argued that the charges against Moya "did not spring from any asserted use of his status as a law enforcement officer." *Id.* at 520, 448 *A.*2d 999 (Clifford, J., dissenting). Rather, Moya was indicted under "garden variety" charges for which the statutory language did not afford indemnification. *Id.* at 518–20, 448 *A.*2d 999. The dissent concluded that Moya was not exposed to criminal prosecution due to his status as

a police officer, and was therefore not entitled to indemnification. *Id.* at 520, 448 *A.*2d 999.

In 1985, the Legislature enacted *L.* 1985, *c.* 457, which amended *N.J.S.A.* 40A:14–155, apparently in response to the decisions in *Valerius* and *Moya.* The scope-of-employment test was changed to provide for indemnification of a police officer only "in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of his legal duties...." The Senate County and Municipal Government Committee Statement accompanying the revisions read:

> Senate Bill No. 1684 [*c.* 457] would amend N.J.S. 40A:14–155 to clarify the scope of a municipality's obligation to provide for the defense, or reimburse the expense of defense, of members or officers of the municipal police department or force who are defendants in any action or legal proceeding. A number of decisions by the courts of this State have expanded the obligation imposed by the literal terms of this section to reach, not only charges of improper performance of police duties, but also charges arising from acts outside the scope of police duties, but occurring in the course of the performance of those duties, and charges arising solely from the person's status as a police officer. The bill would eliminate the coverage of this section for charges arising from acts outside the scope of police duties, but occurring in the course of the performance of those duties, and for "status charges."
>
> [Senate County and Municipal Government Committee, *Statement to Senate Bill No. 1684,* at 1 (June 18, 1984).]

*Amicus curiae* Montgomery Township Board of Education also relies on a fairly recent amendment to the indemnification provisions relating to the Tort Claims Act, *L.* 1989, *c.* 77, § 1, which it asserts adopts a standard for indemnification similar to that embodied in the amendment to the police indemnification statute. Thus, *N.J.S.A.* 59:10–2.1 provides:

> If any criminal action is instituted against any State officer based upon an act or omission of that officer arising out of and directly related to the lawful exercise of his official duties or under color of his authority, and that action is dismissed or results in a final disposition in favor of that officer, the State shall reimburse the officer for the cost of defending the action, including reasonable attorney's fees and costs of trial and appeals.

█ Initially, we note that the Legislature has not seen fit to enact an amendment to the criminal indemnification statute for board-of-education employees that is similar to the police or Tort

Claims Act indemnification provisions. We note further, however, that neither the language of the Tort Claims Act indemnification statute ("arising out of and directly related to the lawful exercise of his official duties") nor that of the amendment to the police indemnification statute ("arising out of and directly related to the lawful exercise of ... powers in the furtherance of his legal duties") definitively would resolve the issue before us. In the absence of any contradictory evidence in the administrative proceeding, dismissal of the indictment requires the assumption that Bower committed no acts other than to perform his duties as a kindergarten teacher. Thus, the inference is compelling that Bower's indictment was premised on acts arising out of and directly related to the lawful exercise of his official duties. Where the record in the criminal proceeding reveals no evidence of any conduct other than the employee's performance of his lawful duties, the factual basis for the indictment becomes inextricably linked with the employee's duties as a teacher.

## III

The parties to this appeal agree that indemnification cannot be denied merely because the alleged criminal acts, if committed, would have been beyond the scope of a teacher's lawful duties. In the State Board decision on remand, the State Board agreed with the Commissioner's decision to deny indemnification, but noted: "However, to the extent that [the Commissioner's decision] may be read to automatically preclude indemnification where the conduct *as alleged* does not fall within the scope of a teacher's duties, we find it necessary to modify the Commissioner's decision." The Attorney General's brief characterizes the State Board's position on that issue:

[I]ndemnification will not be automatically precluded where the charged conduct, even if true, could not have been within the scope of the teacher's duties. Rather, the State Board looks at the quality and character of the charges *and whether the record demonstrates a nexus between the conduct forming the basis of the charge and the teacher's performance of pedagogical duties.*

[Emphasis added.]

■ The obvious difficulty in applying the State Board's standard to this record is that no proof exists of any "conduct forming the basis of the charge." The allegation that Bower engaged in acts of sexual misconduct with students in the bathroom adjacent to the kindergarten classroom is simply unproved. Nor is it established or conceded that Bower ever entered the bathroom when students were present. The only "conduct forming the basis of the charge" that is undisputed is that the alleged events took place in the school, during school hours, and while Bower was required to be engaged in performing his duties as a teacher.

Nevertheless, the State Board asserts that Bower failed to meet his "affirmative burden to demonstrate that the alleged conduct arose out of and in the course of the performance of his duties." As we understand the State Board's position, it contends that Bower not only had the burden of proving that the charges against him were connected sufficiently to his official duties, but that only certain specified testimony would be adequate to satisfy Bower's burden of proof. According to the Board, the indispensable testimony consisted either of an explanation of Bower's presence in the bathroom with his students or a denial that he had been there. The Attorney General's brief summarizes the State Board's position:

> While the State Board held that Bower did not have to defend against the dismissed criminal charges in the indemnification action, it did find that on this record he had at least the burden of showing that his teaching responsibilities required his presence in the bathroom with his students. Such a showing was necessary to demonstrate that his actions arose out of legitimate teaching duties. When Bower never refuted the claim that he was in the bathroom with students, or established that he had a right or responsibility to be there, the State Board reasonably found that he had not met the burden of a teaching staff member seeking indemnification under the statute.

■ Thus, the State Board appears to contend that even if a claimant's proofs in support of indemnification establish the statutory criteria by a preponderance of the evidence, the indemnification claim should be denied if the proofs do not satisfy the Board's supplementary requirement that specific testimony be presented by the claimant that rebuts the charges or explains their specific

relationship to the claimant's performance of his assigned duties. That requirement of supplementary testimony is absent from the statute, and has not been imposed by an administrative regulation adopted to supplement or clarify the statutory standard for indemnification. We frequently have recognized the administrative-law principle that "fairness requires that an administrative agency use its rulemaking power to establish the standards it intends to enforce by adjudication[.]" *Department of Labor v. Titan Constr. Co.,* 102 *N.J.* 1, 14, 504 *A.*2d 7 (1985); *see, e.g., State, Dep't of Envtl. Protection v. Stavola,* 103 *N.J.* 425, 436–38, 511 *A.*2d 622 (1986); *Crema v. New Jersey Dep't of Envtl. Protection,* 94 *N.J.* 286, 301, 463 *A.*2d 910 (1983).

We also note that, following dismissal of the indictment, East Orange vacated its suspension of Bower and permitted him to return to work in a non-teaching capacity. No proceedings were instituted to dismiss Bower, a tenured teacher, on the basis of his alleged misconduct. See *N.J.S.A.* 18A:6–10. Had the local board seen fit to institute such dismissal proceedings, we assume that any evidence adduced at the hearing addressing those charges would have been material to the proceeding instituted by Bower for indemnification of his legal expenses.

We detect from the record before us a sense of frustration on the part of the State Board, stemming no doubt from its concern that the allegations against Bower, although unproved, may have been truthful, in which event indemnification surely would be inappropriate. The State Board's insistence on additional proof from Bower, even proof as simple as a denial that he ever had entered the bathroom when children were present, reflects the Board's understandable reluctance to authorize the reimbursement of a substantial legal fee to a teacher, charged with the commission of serious unlawful acts, who offers no affirmative defense other than that the indictment against him has been dismissed.

Although we understand the State Board's concerns, we are firmly convinced that they cannot be addressed, case by case, by

the imposition of case-specific proof requirements intended to satisfy the State Board's *ad hoc* notion of adequate proof to satisfy the statute. Read literally, the statute prescribes the standards for a civil claim for indemnification, and thus requires mere proof by a preponderance of the evidence that *the act on which the charges are predicated* arose out of and in the course of performance of the duties of employment. There being proof of *no* underlying act other than Bower's presence in the school and performance of his classroom duties, the indictment and its dismissal—unrebutted by any other evidence—clearly satisfy Bower's burden of proof under the statute.

■ The State Board correctly perceives that the statute may mandate indemnification in cases in which, despite a favorable disposition of the criminal charges, doubts may persist about the actual innocence of the teacher seeking reimbursement. The State Board may question the soundness of that legislative judgment but it cannot disregard the statute's clear mandate. To the extent that the State Board may conceive that the statutory requirements could be more effectively implemented through rule-making that might address prospectively and more specifically the scope of the evidentiary hearing and the requisite burden of proof required to implement the legislative will, we foresee no obstacle to the adoption of regulations consistent with the statute and specifically designed for that purpose. We hold only that the imposition of proof requirements specific to Bower's claim in the adjudicatory proceeding instituted by Bower was impermissible. *See Titan Constr., supra,* 102 *N.J.* at 14, 504 *A.*2d 7.

## IV

On this record, we are persuaded that Bower has satisfied the burden of proof imposed on him by *N.J.S.A.* 18:16-6.1. Accordingly, we affirm the judgment of the Appellate Division.

GARIBALDI, J., dissenting.

For plaintiffs' claim for indemnification to be granted, they must demonstrate by a preponderance of the evidence that they meet

the two-prong test required by our education statutes: (1) that the criminal charges were "dismissed or result[ed] in a final disposition in favor" of the employee, *N.J.S.A.* 18:16–6.1; and (2) that the act or omission upon which the criminal charges were based arose "out of and in the course of the performance of the duties" of the employee, *N.J.S.A.* 18A:16–6. I agree with the majority that the dismissal of Mr. Bower's second indictment with prejudice satisfies the first prong of the test, because it constitutes a final disposition in his favor. I disagree, however, with the majority's conclusion that plaintiffs have met their burden of proof with respect to the second prong of the test, because there is no evidence demonstrating that the acts or omissions underlying the criminal charge arose out of and in the course of the performance of Mr. Bower's duties as a teacher. Accordingly, I dissent.

## I

The purpose of school indemnification is to protect school employees from paying litigation costs resulting from civil or criminal actions arising out of the employees' legitimate employment duties. Educators must be able to discharge their duties freely for the public good without fear of economic loss due to legal actions generated by their official acts. *See Powers v. Union City Bd. of Educ.*, 124 *N.J.Super.* 590, 594, 308 *A.2d* 71 (Law Div.1973), *aff'd o.b.*, 127 *N.J.Super.* 294, 317 *A.2d* 373 (App.Div.), *certif. denied*, 65 *N.J.* 575, 325 *A.2d* 709 (1974).

Indemnification, however, is based on the assumption that the charges were unjustified and the employee's actions fell within his or her scope of employment. When the public is asked to reimburse an employee for criminal defense costs, the person seeking such reimbursement must demonstrate by a preponderance of the evidence that the criminal charges arose out of and in the course of the performance of his or her duties as an employee.

Two appellate cases that apply the indemnification statutes to criminal charges deal with the second prong of the test. In the earlier case, *Powers, supra*, decided under *N.J.S.A.* 18A:12–20, the

defendant, who worked for the Board of Education, was alleged to have received kickbacks. In addressing the second prong of the indemnification test, the court noted that although the criminal acts were obviously beyond Power's prescribed duties, that did not immunize the board from statutory liability. 124 *N.J.Super.* at 595, 308 *A*.2d 71. The court found that the statute requires that the criminal charge involve an act or omission arising out of the performance of a board member's duties, and that the act or omission arise in the course of performing those duties. In denying indemnification, the court found that although the alleged criminal conduct may have originated out of Power's performance of his duties as a member of the board, it could not have been done in the course of carrying out those duties. *Id.* at 597, 308 *A*.2d 71.

Likewise, in *Scirrotto v. Warren Hills Bd. of Educ.*, 272 *N.J.Super.* 391, 394–95, 640 *A*.2d 302 (App.Div.1994), the Appellate Division denied reimbursement to a teacher who prevailed against bribery and other charges. Scirrotto allegedly sought to bribe the principal in order to be rehired as a teacher at the school. The panel concluded that although the events arose in the course of his employment, they did not arise out of the performance of his teaching duties. *Id.* at 397, 640 *A*.2d 302. Both *Powers* and *Scirrotto* demonstrate that in evaluating a teacher's petition for indemnification, a court's inquiry under the second prong of the test must be whether the acts or omissions, upon which the indictment was based, arose out of the performance of teaching duties rather than merely in the course of employment.

II

In resolving educational disputes, we adhere to the rule that "the ultimate administrative decision-maker in reviewing ... school matters is the State Board, whose final decision will not be upset unless unreasonable, unsupported by the record or violative of the legislative will." *Capodilupo v. Board of Educ.*, 218 *N.J.Super.* 510, 515, 528 *A*.2d 73 (App.Div.) (citation omitted), *certif.*

*denied,* 109 *N.J.* 514, 537 *A.*2d 1300 (1987); *see also G.E. Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 306, 625 *A.*2d 468 (1993) ("Generally courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing."); *Kaprow v. Board of Educ.,* 131 *N.J.* 572, 591, 622 *A.*2d 237 (1993) ("Ordinarily, we will not reverse the determination of an administrative agency unless it is arbitrary, capricious or unreasonable, or is not supported by substantial credible evidence in the record as a whole."). That rule derives from our recognition that " 'certain subjects are within the peculiar competence of the agency.' " *Dennery v. Board of Educ.,* 131 *N.J.* 626, 637, 622 *A.*2d 858 (1993) (citation omitted).

The Administrative Law Judge (ALJ), the Commissioner of Education (Commissioner), and the State Board of Education (State Board), all found that plaintiffs had not satisfied their burden of showing that the criminal charges against Mr. Bower originated out of the performance of his duties as a teacher, the second prong of the test. A review of the record demonstrates that none of the three acted arbitrarily or unreasonably in declining to grant plaintiffs' claim for reimbursement. *See, e.g., Kaprow, supra,* 131 *N.J.* at 582, 622 *A.*2d 237.

As was observed "in *Scirrotto,* [*supra,*] 'the facts underlying the criminal charge should be analyzed strictly rather than liberally, so that reimbursement of legal fees and expenses should only ensue when the circumstances are such as to fit clearly within the legislative limitations.' " *Bower v. Board of Educ.,* 287 *N.J.Super.* 15, 34, 670 *A.*2d 106 (1996) (Landau, J.A.D., dissenting) (quoting *Scirrotto, supra,* 272 *N.J.Super.* at 396, 640 *A.*2d 302). The fact that the criminal charges were resolved in a final disposition in Mr. Bower's favor is insufficient to establish that the charges arose out of and in the course of the performance of his duties as a teacher. The dismissal of the criminal charges merely fulfills the first prong of the test.

As the State Board correctly determined,

the fact that the criminal charges against petitioner were dismissed and the acts giving rise to those charges were alleged to have occurred on school premises is not sufficient to satisfy petitioner's statutory burden. It was his affirmative burden to demonstrate that the alleged conduct arose out of and in the course of the performance of his duties. He failed to satisfy that burden. Therefore, we find that he has failed to establish that the Board has any responsibility to indemnify him.

No testimony was provided at the administrative hearings. There was a brief stipulation of facts at the second hearing, supplemented by a summary of the abuse allegations against Bower, including copies of the Grand Jury testimony and the police reports that included the statements made to police by three children in Bower's kindergarten class, who alleged that they were victims of Bower's sexual misconduct. None of that evidence proved that the charges against Mr. Bower arose out of and in the course of the performance of his teaching duties.

In particular, the State Board was troubled by the children's consistent statements about Mr. Bower's presence, with them, in the single-occupancy bathroom attached to his classroom. In its Decision, dated August 13, 1994, the State Board acknowledged that

[p]etitioner is not required to defend against the dismissed criminal charges in this action for indemnification. However, despite the opportunity to do so, *petitioner has not established that the criminal charges arose from conduct occurring at a place where he was entitled to be in the course of fulfilling the duties of his employment or doing something incidental to it.* The record, as supplemented on remand, indicates only that the alleged conduct occurred in a bathroom adjoining petitioner's kindergarten classroom. There is no indication in the record as to whether this facility was for the exclusive use of students or whether teachers also used the facility. *See N.J.A.C.* 6:22–5.4(h)(4) (toilet facilities for kindergarten classrooms must be provided in each classroom or adjacent thereto and must be located and equipped so as *to ensure privacy for the pupils). Nor is there anything to show that any of his teaching duties required that he accompany the students into the facility.*

[Emphasis added.]

The State Board, thus, was concerned that a bathroom was not a place where one would ordinarily fulfill teaching duties, and concluded that no nexus existed between Mr. Bower's alleged conduct and the performance of his teaching duties. I defer to that agency decision, because it is based on expert knowledge

concerning kindergarten children and a kindergarten teacher's duties.

## III

What plaintiffs and the majority essentially assert is that all a teacher must do to receive indemnification is to satisfy the first prong of the two-prong test. As the majority states,

[i]n the absence of any contradictory evidence in the administrative proceeding, *dismissal of the indictment requires the assumption that Bower committed no acts other than to perform his duties as a kindergarten teacher.* Thus, the inference is compelling that Bower's indictment was premised on acts arising out of and directly related to the lawful exercise of his official duties.

[*Ante* at 431, 694 *A*.2d at 551 (emphasis added).]

The majority, in effect, holds that dismissal of the criminal charges alone is sufficient to satisfy both prongs of the indemnification test. That conclusion, however, negates the need for the second prong of the test, because the first prong of the test specifically requires dismissal of the charges or some other disposition in favor of the employee.

Moreover, the majority improperly places the burden of proof on the local school board to demonstrate that the acts, on which the indictment was based, did not relate to the lawful exercise of Mr. Bower's teaching duties. The majority, thus, has created a new standard whereby it will be presumed that a dismissed indictment of a teacher, seeking indemnification, was premised on acts arising out of and directly related to the performance of his or her duties as a teacher. *See ante* at 431, 694 *A*.2d at 551. The majority's reasoning rests on the fact that the local school board failed to provide proof that Mr. Bower accompanied the children to the bathroom, the act forming the basis for the complaint:

The obvious difficulty in applying the State Board's standard to this record is that no proof exists of any "conduct forming the basis of the charge." The allegation that Bower engaged in acts of sexual misconduct with students in the bathroom adjacent to the kindergarten classroom is simply unproved. Nor is it established or conceded that Bower ever entered the bathroom when students were present. The only "conduct forming the basis of the charge" that is undisputed is that the alleged events took place in the school, during school hours, and while Bower was required to be engaged in performing his duties as a teacher.

[*Ante* at 432, 694 *A*.2d at 552.]

However, the Legislature intended that the teacher, seeking indemnification, rather than the local school board, bear the burden of satisfying the two-prong test by a preponderance of the evidence. Mr. Bower failed to meet his burden because he did not produce evidence indicating that he did not accompany his students to the bathroom or that it was part of his duties to do so. Contrary to the majority's claim, therefore, the State Board's decision did not require plaintiffs to submit supplementary proofs. *See ante* at 432, 694 *A*.2d at 552. The State Board properly required plaintiffs to submit proof establishing the second prong of the two-prong indemnification test—that the criminal charges against Bower arose from his employment as a teacher and in the course of performing his duties.

IV

I agree with the majority and the parties that "indemnification cannot be denied merely because the alleged criminal acts, if committed, would have been beyond the scope of a teacher's lawful duties." A teacher seeking indemnification, however, bears the burden of demonstrating that the acts or omissions, upon which the criminal charges were based, arose out of *and* in the course of the performance of his or her official duties as a teacher.

Plaintiffs have failed to prove by a preponderance of the evidence that the dismissed criminal charges arose from conduct that occurred at a place where Mr. Bower was entitled to be in the course of fulfilling the duties of his employment. Plaintiffs cannot simply point to the charges and the dismissal of the indictments in order to be indemnified. In order to satisfy the second prong of the test, they must establish a nexus between the act or omission, underlying the indictment, and the performance of legitimate job duties. They have failed to do so.

In view of the majority's decision, I invite the Legislature to consider amending *N.J.S.A.* 18A:16–6, as it amended *N.J.S.A.* 40A:14–155, when it determined that our decisions in *Moya v. New*

*Brunswick,* 90 *N.J.* 491, 448 *A.*2d 999 (1982) and *Valerius v. Newark,* 84 *N.J.* 591, 423 *A.*2d 988 (1980), were wrong. In those cases we allowed reimbursement for criminal charges arising from a police officer's acts outside the scope of his police duties, but occurring in the performance of those duties, and for criminal charges arising solely from a claimant's status as a police officer.

I would reverse the judgment of the Appellate Division.

*For affirmance*—Justices HANDLER, POLLOCK, O'HERN and STEIN—4.

*For reversal*—Chief Justice PORITZ and Justices GARIBALDI and COLEMAN—3.